# IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT NASHVILLE
_____

|  |  |  |
|---|---|---|
| **PROFILL DEVELOPMENT, INC.,** | ) | Davidson County Chancery Court |
|  | ) | No. 95-1748-III |
| Plaintiff/Appellant. | ) |  |
|  | ) |  |
| VS. | ) | C. A. NO. 01A01-9607-CH-00326 |
|  | ) |  |
| **DON DILLS, COMMISSIONER OF** | ) |  |
| **THE TENNESSEE DEPARTMENT** | ) |  |
| **OF ENVIRONMENT AND**, | ) |  |
| **CONSERVATION, ET AL**, | ) |  |
|  | ) |  |
| Defendants/Appellees. | ) |  |
|  | ) |  |

**FILED**

**April 25, 1997**

**Cecil W. Crowson
Appellate Court Clerk**

_____

From the Chancery Court of Davidson County at Nashville.
**Honorable Robert S. Brandt, Chancellor**

**J. Alan Hanover**,
**James R. Newsom, III**,
**Helen L. Keith**,
HANOVER, WALSH, JALENAK & BLAIR, PLLC, Memphis, Tennessee
Attorneys for Plaintiff/Appellant.



**Charles W. Burson**, Attorney General and Reporter
**Elizabeth P. McCarter**, Senior Counsel
Attorney for Defendants/Appellees Don Dills and Charles W. Burson

**Gary A. Davis**, Knoxville, Tennessee
Attorney for Defendant/Appellee West Tennesseans for Clean Water and Environment.
.

OPINION FILED:

**AFFIRMED AND REMANDED**


**FARMER, J.**


**HIGHERS, J.** : (Concurs)
**LILLARD, J.** : (Concurs)

This appeal from a declaratory judgment lawsuit arose out of Appellant's attempts to construct and to operate a solid waste landfill. In 1992, Profill Development, Inc. (hereinafter, "Profill") applied to the Tennessee Department of Environment and Conservation (hereinafter, "Department") for a solid waste disposal permit to construct and to operate a "Class I disposal facility" in Gallaway, Fayette County, Tennessee. The Tennessee Solid Waste Disposal Act, T.C.A. §68-211-101 *et seq*. (1996) authorizes the Tennessee Solid Waste Disposal Control Board (hereinafter, "the Board") to promulgate rules governing solid waste processing and disposal facilities. These rules have been promulgated by the Board as Tenn. Comp. R. & Regs. (hereinafter, "Rule") 1200-1-7, *et seq*. A Class I disposal facility is:

> [A] sanitary landfill which serves a municipal, institutional, and/or rural population and is used or to be used for disposal of domestic wastes, commercial wastes, institutional wastes, municipal wastes, bulky wastes, landscaping and land clearing wastes, industrial wastes, construction/demolition wastes, farming wastes, discarded automotive tires, and dead animals.

Rule 1200-1-7-.01(3)(a).

The 1989 enactment of T.C.A. § 68-211-701 *et seq.*, (hereinafter, "Part Seven") permitted local governments that did not have zoning ordinances to approve or disapprove of landfill proposals submitted to the Department. As originally enacted, Part Seven gave cities and counties the authority to approve or disapprove of proposals for solid waste facilities located within their respective boundaries and also gave cities the same authority over solid waste facilities located within one mile of municipal boundaries. In 1995, Part Seven was amended so as to permit counties to approve or disapprove of solid waste facilities to be located within the municipal boundaries.

As originally enacted in 1989, Part Seven contained the following provision:

> This act shall remain effective until the approval and effective implementation of the plan as set forth in Senate Bill 1322/House Bill 1305 of the Ninety-Sixth General Assembly, being the "Tennessee Solid Waste Planning and Recovery Act", if enacted, or June 30, 1991, whichever shall first occur.

1989 Tenn. Pub. Acts, chap. 515, §9. The Solid Waste Management Act of 1991, T.C.A. § 68-211-801 *et seq*., (hereinafter, "Part Eight") was enacted in response to the requirements imposed under the Tennessee Solid Waste Planning and Recovery Act, T.C.A. §68-211-603. (hereinafter, "Part Six"). In 1991, the legislature amended Part Seven to extend the expiration date of Part Seven from June 30, 1991, until June 30, 1994. In 1994, the expiration provision was again amended so as to extend the expiration date to June 30, 1995. On March 15, 1995, the general assembly again amended Part Seven to remove the expiration clause altogether.

Applications to construct and to operate disposal facilities such as the one Profill submitted, consist of two parts known as "Part I" and "Part II." In June 1992, Profill submitted Part I to the Department. The Part I application, in addition to the landfill proposal, referenced a proposed materials recycling facility to be located at the Fayette County site. Profill submitted the first portion of the Part II application in May 1993, and it submitted the second portion of the Part II application in May 1994. The Department regularly conducts "completeness" reviews of applications in order to ensure that the numerous reports and plans submitted by the applicant include all required components and items. Upon the review of the Part II application, the Department determined that Profill's application was incomplete. Therefore, the Department sent a notice of incompleteness letter dated July 1, 1994. Profill submitted a revised application in August 1994.

Under procedural rules governing consideration of landfill applications, the Department must conduct its completeness review of the first phase of the Part II application within 30 days after receipt of said application. The completeness review of the second phase must be conducted within 45 days after receipt of that portion of the application. Once the permit application has been certified to be complete, the Department has an additional 270 days to conduct its technical review, issue a tentative permit decision, conduct public hearings, and make a final decision upon the application. On September 2, 1994, the Department notified Profill that its application was complete. That letter commenced the running of the 270 day period for the Department to review the application, make tentative and final decisions thereon and either grant or deny the permit.

In December 1994, the Department sent a notice of deficiency letter to Profill detailing fifteen technical deficiencies in the application. One of the deficiencies cited in the December 1994, letter referenced Profill's failure to submit a separate notification for its materials recycling facility. After a meeting between officials from both the Department and Profill, the Department still concluded that the processing facility notification should be separated from the Class I landfill application. Profill filed with the Department a separate notification for the processing facility on March 2, 1995.

The Class I landfill application was submitted for consideration by the Department's permit review committee which was to consider the application on April 13, 1995. However, the application was never considered because the Department was notified on March 28, 1995, that Fayette County had "opted in" to the amended Part Seven provisions which permitted counties to disapprove of landfill proposals located within municipal boundaries. As amended, T.C.A. § 68-211-105(h) states that the Commissioner:

> [S]hall not review or approve any construction for any new landfill for solid waste disposal or for solid waste processing in any county or municipality which has adopted the provisions of §§ 68-211-701 -- 68-211-704 and § 68-211-707 until such construction has been approved in accordance with the provisions of such sections.

Therefore, the Department ceased review of Profill's application upon notification that Fayette County had adopted Part Seven.

On April 18, 1995, Profill filed with the Tennessee Solid Waste Disposal Control Board a petition for declaratory order seeking a determination of the validity and applicability of Part Seven, as amended. Pursuant to T.C.A. § 4-5-223, the board declined to issue a declaratory order in the matter and waived jurisdiction on all issues before it. By consent order entered June 6, 1995, the Board ordered that the petition be submitted to the Davidson County Chancery Court for consideration and determination. Thereafter, on June 6, 1995, Profill filed its Complaint for Declaratory Judgment. The chancellor entered an order granting West Tennesseans for Clean Water and Environment (hereinafter "West Tennesseans") permission to intervene as a party defendant. The defendants filed motions to dismiss and for summary judgment. The trial court granted in part

and denied in part the motion to dismiss filed by West Tennesseans. Specifically, the trial court dismissed Profill's claims brought pursuant to the Commerce Clause and Supremacy Clause of the United States Constitution and left the remaining claims for trial.

The trial court granted summary judgment to the state defendants on the following claims: (1) the 1995 amendments to Part Seven did not apply to Profill because the City of Gallaway had not opted to be covered by it; (2) the application of the 1995 amendments violated the Commerce Clause of the United States Constitution; (3) the application of the 1995 amendments impaired the right of Profill to contract under the United States Constitution; (4) Profill's property had been taken without due process of law in violation of the United States Constitution; and (5) the enactment of the 1995 amendments was a suspension of the general law in violation of Art. II, Section 8 of the Tennessee Constitution. The remaining claims against the State proceeded to trial, without intervention of a jury, on January 8 and 9, 1996, and February 5 and 6, 1996.

The trial court filed a memorandum opinion stating its findings of fact and conclusions of law. Judgment was entered denying the relief sought, and Profill appeals.

## ISSUES

Profill raises the following issues for review:

1. Whether, due to the "effective implementation" of Part Eight, Part Seven expired prior to the enactment of the 1995 Amendments.

2. Whether due to the provisions of [T.C.A.] § 68-211-707, Part Seven is inapplicable to the Profill application.

3. Whether Part Seven applies to the Solid Waste Processing Facilities proposed by Profill.

4. Whether Part Seven is preempted by the Resource Conservation and Recovery Act of 1976, 42 U.S.C. §§ 6941 *et seq.*, pursuant to the Supremacy Clause of the United States Constitution.

5. Whether Profill's rights to administrative due process have been denied.

6. Whether the "local veto" authority granted by Part Seven is an unconstitutional delegation of legislative power in violation of

the Tennessee Constitution.

7. Whether Part Seven suspends the general law by permitting local governmental entitles to determine legislative policy of statewide concern in violation of the Tennessee Constitution.

8. Whether [T.C.A.] § 68-211-105(h) has been repealed by implication by [T.C.A.] § 68-211-707(b).

9. Whether the application of Part Seven to the Profill landfill application impermissibly impairs Profill's contractual rights.

Appellees have submitted the following issue for review:

Does the exemption in [T.C.A.] § 68-211-706(b) for publicly owned landfills violate equal protection?

## I.  Part Seven Had Not Expired Prior to 1995

Profill asserts that Part Seven expired by its own terms prior to the 1995 amendments. As originally adopted in 1989, T.C.A. § 68-211-708 (1989), read as follows:

This act shall remain effective until the approval and effective implementation of the plan as set forth in Senate Bill 1322/House Bill 1305 of the Ninety-Sixth General Assembly, being the "Tennessee Solid Waste Planning and Recovery Act," if enacted, or June 30, 1991, whichever shall first occur.

1989 Tenn. Pub. Acts, chap. 515, § 9.

1991 Tenn. Pub. Acts, chap. 451, § 85 amended § 708 to extend the expiration date to June 30, 1994.  Subsequently, 1994 Tenn. Pub. Acts, chap. 784, § 1 further amended § 708 and extended the expiration date until June 30, 1995.  On March 13, 1995, the general assembly again amended Part Seven to remove the expiration clause from § 708, and said law was enacted on March 15, 1995.

As originally enacted in 1989, Part Seven gave county legislative bodies the authority to disapprove plans for landfills in unincorporated areas only, and reserved for municipalities the

same power over proposed landfills within incorporated areas and those located within one mile of the municipality. Because Profill's proposed landfill was located within the incorporated town of Gallaway, Fayette County's legislative body could not veto Profill's plans despite the county's opposition. The 1995 amendments to Part Seven granted counties veto authority regarding proposed landfills within municipalities. That section provides in relevant part:

> No construction shall be initiated for any new landfill for solid waste disposal or for solid waste processing until the plans for such new landfill have been submitted to and approved by:
>
> . . . .
>
> (2) Both the county legislative body and the governing body of the municipality in which the proposed landfill is located, if such new construction is located in an incorporated area; . . .

T.C.A. §68-211-701 (1995). Fayette County adopted the 1995 amendments to Part Seven on March 28, 1995.

As originally enacted in 1989, Part Seven would have expired upon the occurrence of one of two alternative conditions. These conditions were either the approval and effective implementation of the plan as set forth in the Tennessee Solid Waste Planning and Recovery Act, compiled in Part Six or June 30, 1991, whichever occurred first. Profill asserts that when the 1991 general assembly enacted Part Eight, which is the "Solid Waste Management Act of 1991," that action constituted the approval and effective implementation of the "plan" required by Part Six.

The plan required by Part Six and referred to in 1989 Tenn. Pub. Acts, chap. 515, § 9, is a blueprint for a statewide, comprehensive solid waste management program that the Department was required to establish no later than January 1, 1991. There is no explanation by what is meant by the terms "effective implementation" of the plan referenced in 1989 Tenn. Pub. Acts, chap. 515, § 9. Consequently, it is incumbent upon the Court to look to the legislative history in order to determine what the general assembly meant by "effective implementation."

It is evident that when the 1989 general assembly passed Part Seven, it intended that local government authority over landfill plans would expire upon the passage of Part Eight. Profill's

contention in this regard is correct. Representative Jackson, the sponsor of Part Seven, in an appearance before the House Committee on state and local government was asked about the expiration of Part Seven:

> Rep. Jackson: Mr. Chairman, amendment number one, which was discussed with the subcommittee, would specify that this bill would sunset upon the effective implementation of the comprehensive plan as provided for in Chairman Ivy Hillis' bill and Senator Greer's bill.
>
> . . . .
>
> Mr. Chairman: When the other plan is adopted by the legislature, then this sunsets this bill?
>
> Rep. Jackson: That's correct.

It is evident that both the Chairman and Representative Jackson were referring to Part Eight as "the other plan." Part Seven's Senate sponsor was Senator Darnell. In a debate before the Senate on May 25, 1989, Senator Darnell explained when Part Seven would terminate:

> Senator Darnell: If I could explain the bill to the members. This is a solid-waste disposal act that will allow a system to go into effect that is the equivalent to a zoning operation.
>
> And in this instance because amendments that have been adopted in the House, the whole process is going to sunset when Senator Greer's bill comes into play July 1, 1991. So the bill is going to have a short life-span because of the comprehensive planning that Senator Greer's bill calls for.
>
> It allows those counties that do not have a comprehensive zoning plan . . . to opt into this legislation and, in effect, give them an opportunity to review applications for landfills.

Senator Greer had been the sponsor of the 1989 rational planning approach enacted as Part Six. T.C.A. § 68-211-601 *et seq.*

The Court finds that had it not been for subsequent amendments to Part Seven that occurred in the 1991, 1994 and 1995 legislative sessions, Part Seven would have expired upon enactment of Part Eight. It was clearly the intent of the general assembly in 1989 that passage of Part Eight would operate as "effective implementation" of the plan required by Part Six. However, the

1991 general assembly passed Part Eight and extended the expiration date for Part Seven from June 30, 1991, until June 30, 1994. The Court finds it noteworthy that the legislature enacted Part Eight and amended Part Seven at the same time, on the same date and in the same act. Furthermore, both Senators Greer and Darnell, key players in the enactment of Part Seven in 1989, were also sponsors of 1991 Tenn. Pub. Act, chap. 451. Evidently, in 1991, the general assembly no longer intended that the enactment of Part Eight would automatically cause Part Seven to expire. By 1991, the legislative intent was that the authority of the local governments and the political process permitted by Part Seven would not expire automatically when Part Eight was passed. The general assembly is presumed to have knowledge of its prior enactments and to know the state of the law at the time it passes legislation. *Neff v. Cherokee Ins. Co.*, 704 S.W.2d 1, 4 (Tenn. 1986). Therefore, we find that by 1991, "effective implementation" of the Part Six plan meant something other than the passage of Part Eight.

If Part Eight is not "the plan" then the Court is left to determine from the legislative intent what "the plan" is. Part Eight contemplated that the implementation of the State plan would occur over a number of years. A comprehensive statewide plan was predicated upon the submission and approval of nine regional plans that were to have been submitted to the State planning office by December 31, 1993. Section 814(a) was amended in 1993 in order to extend the date for submission of the regional plans to July 1, 1994. Part Eight gives deference to Part Seven and its goal of providing local control over the location of solid waste facilities by Part Eight's provisions giving regional approval authority to new solid waste facilities once the region's plan has been approved by the Department. The Department's division of solid waste assistance is charged with facilitating the implementation of the State plan. The division's director, Paul Evan Davis, testified at trial that the passage of Part Eight was the first step in the planning process and that the plan had not been effectively implemented and would not be finally implemented until his division had approved regional plans for each of the solid waste regions.

The passage of Part Eight did not constitute effective implementation of the Part Six plan. In 1991, 1994, and 1995, the general assembly did not intend that the passage of Part Eight would constitute effective implementation of the Part Six plan. While the legislature may have intended in 1989 for Part Seven to expire upon the passage of Part Eight, that legislative intent

changed by 1991 when Part Seven was amended to extend its expiration date until 1994. The legislature again extended the expiration date of Part Seven in 1994 and removed it altogether in 1995. The Court finds that the general assembly expressed its view that Part Eight had not been effectively implemented and that more time was necessary for development and approval of the regional plans. When the legislature amended Part Seven in 1995 to remove the expiration date altogether, its intent was that Part Seven had not expired and would not expire.

The Court finds that it has been the intent of the general assembly since at least 1991 that landfill location decisions should be subject to the political process. Good, bad or indifferent, this is the public policy of this State as determined by the general assembly. Accordingly, the Court affirms the chancellor's decision finding that Part Seven had not expired in 1995.

### II. Part Seven Does Not Require Both the County and the Municipality to Adopt Its Provisions in Order for it to Apply

Profill argues alternatively that even if Part Seven is still in effect, that part does not apply to the facts of the instant case because the City of Gallaway, where the landfill was to be located, had not adopted or "opted into" Part Seven. The argument is premised on the theory that both the city and the municipality must adopt Part Seven before its provisions will apply. Profill cites T.C.A. § 68-211-707(a), which states in relevant part:

> The provisions of §§ 68-211-701 - 68-211-705 and this section shall only apply in any county or municipality in which it is approved by a two-thirds (2/3) vote of the appropriate legislative body. . . .

Since the property on which Profill had proposed constructing the landfill is located within the City of Gallaway and because Gallaway never adopted Part Seven using the procedure established by T.C.A. § 68-211-707, Profill asserts that Part Seven is not applicable to it.

Part Seven provides for approval by either a county or a city or both where a proposed solid waste facility is to be located in an incorporated municipality. Specifically, T.C.A. § 68-211-701 states in relevant part:

No construction shall be initiated for any new landfill for solid waste disposal or for solid waste processing until the plans for such new landfill have been submitted to and approved by:

. . . .

(2) Both the county legislative body and the governing body of the municipality in which the proposed landfill is located, if such new construction is located in an incorporated area.

T.C.A. § 68-211-701(1995). The Court finds that the approval mechanism established by Part Seven does not require that both the county and city adopt Part Seven. T.C.A. § 68-211-707(a) grants the option of opting-in at the discretion of the county and the municipality. Therefore, we decline to find that local governments are under any obligation to adopt the provisions of Part Seven. Even before the 1995 amendments, T.C.A. § 68-211-701 granted municipalities, such as the City of Gallaway, the exclusive right to opt into Part Seven. The City of Gallaway chose not to opt into Part Seven when it was the only governmental entity entitled to do so in regard to a landfill within its boundaries. By not adopting Part Seven, the City of Gallaway entered into contracts in 1992 with Profill for the construction of the landfill facility. A local government's failure to opt into Part Seven operates as *defacto* approval of the proposed landfill, thus permitting companies such as Profill to seek approval directly from the Department. The Court finds no requirement that both the city and the county must adopt the provisions of Part Seven in order for that Part to apply. Adoption of Part Seven by either or both entities is sufficient for the provisions of Part Seven to apply.

### III. Part Seven Applies to the Solid Waste Processing Facilities

In addition to the landfill, Profill also planned to construct and to operate a solid waste processing facility. Profill asserts on appeal that Part Seven does not apply to the proposed solid waste processing facility, and argues that the Department has not demonstrated a basis for its failure to grant or deny approval for the processing facility. Profill maintains that it intends to operate the processing facility regardless of the outcome of the landfill application.

Rule 1200-1-7-.02(1)(c) provides that certain classes of activity shall be deemed to have a "permit-by-rule" if certain conditions are met. One such enterprise noted in Rule 1200-1-7-.02(1)(c)(1)(I) is a processing facility. Under the permit-by-rule procedure, an applicant is entitled

to approval from the Department if it demonstrates that all the requirements of the rule have been or will be met before operation of the facility begins. Profill asserts that it has met all the requirements to construct a processing facility. Therefore, Profill asserts that it is entitled to an order directing the Department to dispose of the processing facility notification regardless of whether Profill prevails on the landfill issue.

The proposed solid waste processing facility was a part of the original permit application which was certified as complete by the Department on September 2, 1994. Rule 1200-1-7-.07(6)(b) states that a permit application for a processing facility shall be acted upon by the Department within ninety days after the application is certified as complete. Accordingly, Profill asserts that the Department should have acted on its notification for the processing facility no later than December 1, 1994. By letter dated December 7, 1994, the Department requested that Profill separate the processing facility notification from the landfill application and submit a separate notification for the processing facility. Profill complied with the Department's request by filing a separate notification on March 2, 1995. Profill asserts the Department could not reasonably presume that the processing facility notification was dependent upon the landfill application; therefore, the Department should have acted upon the notification regarding the processing facility within ninety days of March 2, 1995.

The Court concludes that Profill's argument has no merit. Profill expressly waived the 90 day deadline in order to have its processing facility considered together with the landfill application. In a December 22, 1994, letter to the Department responding to the Department's notice of deficiency letter, Profill's representative William Hagerman stated:

> If the Department is concerned about the shorter period for the Department's permit determination of Permit-by-Rule facilities as compared to that of the land disposal unit, Profill acknowledges that by incorporation of the Permit-by-Rule facilities within this Application with the land disposal unit (a unit that requires lengthy review by the Department), Profill has forfeited its rights as provided by the Rules to a shorter permit determination period on the Permit-by-Rule facilities.

Profill also maintains that Part Seven applies to landfills only, and has no application

whatsoever to solid waste processing facilities.  T.C.A. § 68-211-701 states in pertinent part:

> No construction shall be initiated for any new <u>landfill</u> for solid waste disposal or for solid waste processing until the plans for such new <u>landfill</u> have been submitted to and approved by . . . .  (Emphasis added.)

T.C.A. § 68-211-702 defines landfill as follows:

> For purposes of this part, "landfill or landfilling" means any land used for disposal of solid waste by filling and covering.

When called upon to construe statutes, courts presume that the general assembly selected the words deliberately, ***Tenn. Manufactured Housing Ass'n. v. Metropolitan Gov't.***, 798 S.W.2d 254, 257 (Tenn. App. 1990), and that each word is a necessary part of the statute.  ***Tenn. Growers, Inc. v. King***, 682 S.W.2d 203, 205 (Tenn. 1984).  Statutory words draw their meaning from the context of the entire statute, ***Knox County ex rel Kessel v. Lenior City, Tenn.***, 837 S.W.2d 382, 387 (Tenn. 1992), and from the statute's purposes and objectives.  ***Dorrier v. Dark***, 537 S.W.2d 888, 892 (Tenn. 1976); ***Pearson v. Hardy***, 853 S.W.2d 497, 500 (Tenn. App. 1992).

The general assembly was imprecise in the use of the term "landfill."  The definition of "landfill" contained in T.C.A. § 68-211-702 does not contain any reference to "solid waste processing."  Likewise, the definition of "solid waste processing" found in T.C.A. § 68-211-103(11) does not contain any reference to "landfill."  Specifically, that section states:

> "Solid Waste processing" means an operation for the purpose of modifying the characteristics or properties of solid waste to facilitate transportation or disposal of solid waste including, but not limited to, incineration, composting, separation, grinding, shredding, and volume reduction.

We, nonetheless, find it to be the general assembly's intent that Part Seven applies to solid waste processing facilities as well as to landfills.  The general assembly intended that the approval provisions of Part Seven apply to construction of solid waste processing facilities as well as to landfills for solid waste disposal because the general assembly specifically referenced "solid

waste processing" in T.C.A. § 68-211-701. A statute should not be construed in a manner that would render any of its language superfluous. ***Horne v. Cox***, 551 S.W.2d 690, 691 (Tenn. 1977); ***Tidwell v. Collins***, 522 S.W.2d 674, 676-77 (Tenn. 1975). Furthermore, we find it to be the general assembly's intent, as interpreted by the Department, that Part Seven apply to solid waste processing facilities as well as to landfills. In an August 15, 1995, memorandum, Joe Sanders, an attorney in the Department's office of general counsel, stated the Department's position that "[t]he Jackson Law applies to 'new' landfills and 'new' solid waste processing facilities."

Our supreme court in ***Jackson Express, Inc. v. Tennessee Public Service Comm.***, 679 S.W.2d 942, 945 (Tenn. 1984), held that courts must give great deference and controlling weight to an agency's interpretation of its own rules. As the supreme court stated, administrative interpretation "becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." ***Jackson Express, Inc.*** 679 S.W.2d at 945; ***See also, Compton v. Tennessee Dept. of Public Welfare***, 532 F.2d 561, 565 (6th Cir. 1976). The Court finds that the Department has the knowledge, expertise and experience and is charged with the administration of the technical details of the statute. Accordingly, the Department's decisions concerning the applicability of technical terms of the statute are entitled to deference in the same manner as other technical decisions. ***Wayne County v. Solid Waste Disposal Control Board***, 756 S.W.2d 274, 279-280 (Tenn. App. 1988). It is undisputed that Profill's proposed recycling facility is a solid waste processing facility. Therefore, such facilities are subject to the provisions of Part Seven.

## IV. The Federal Resource Conservation and Recovery Act Does Not Preempt Part Seven

Profill claims that Part Seven is preempted by the Federal Resource Conservation and Recovery Act (hereinafter "RCRA"), 42 U.S.C. § 6901 ***et seq.***, which contains the federal requirements for solid and hazardous waste management. The chancellor dismissed this claim pursuant to Rule 12.02(6) T.R.C.P. The Court finds that the federal act explicitly addressed the issue of preemption and specifically provided that states may enact requirements that are more stringent than the federal requirements. Federal preemption of state laws arises from the Supremacy Clause of the United States Constitution. Under the Supremacy Clause, federal law may preempt the conflicting state law where (1) Congress enacts a federal law that explicitly preempts state authority,

(2) where Congress impliedly enacts a pervasive scheme of federal regulation that occupies a field leaving the states no room to supplement the scheme, or (3) where state law actually conflicts with federal law. *See Gade v. Nat'l Solid Wastes Management Assoc.*, 505 U.S. 88, 112 S.Ct. 2374, 2383 (1992). Where Congress expressly addresses the issue of federal preemption of state law, courts should limit their preemption analysis to the meaning of the state law provision instead of addressing the issue of implied preemption. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S.Ct. 2608 (1992); *Vango Media v. The City of New York*, 34 F.3d 68, 72 (2d Cir. 1994). The United States Supreme Court stated in *Cipollone*:

> When Congress has considered the issue of preemption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a "reliable indicium of congressional intent with respect to state authority," . . . "there is no need to infer congressional intent to preempt state laws from the substantive provisions" of the legislation.

*Cipollone*, 112 S.Ct. at 2618.

Congress expressly addressed the preemption issue in RCRA. Section 3009 of RCRA, 42 U.S.C. § 6929, provides in pertinent part:

> Upon the effective date of regulations under this sub-chapter no State or political subdivision may impose any requirements less stringent than those authorized under this sub-chapter respecting the same matter as governed by such regulations, except that if application of a regulation with respect to any matter under this subchapter is postponed or enjoined by the action of any court, no state or political subdivision shall be prohibited from acting with respect to the same aspect of such matter until such time as such regulation takes effect. ***Nothing in this chapter shall be construed to prohibit any State or political subdivision thereof from imposing any requirements, including those for site selection, which are more stringent than those imposed by such regulations.*** (Emphasis added.)

Congress expressly addressed the preemption issue of state law when enacting RCRA. Therefore, in determining whether the RCRA preempts Part Seven, the analysis should be limited to the express language without any consideration of implied preemption. *Cipollone*, 112 S.Ct. at 2618.

The United States Environmental Protection Agency (hereinafter, "EPA") has made

it clear that its criteria for the design and operation of municipal solid waste landfills do not preempt state authority to enact more stringent statutes and regulations for location of solid waste landfills. *See* **56 Fed. Reg. 50978,** *et seq*. **(Oct. 9, 1991)**. Specifically, the EPA regulations state:

> EPA's approach to State program approval recognizes the traditional State role in implementing landfill standards and protecting ground water. EPA fully intends that States will maintain the lead role in implementing this program. EPA's goal is for all States to apply for and receive approval of their programs. Under this rule, States will have the flexibility to tailor standards to meet their state-specific conditions.

*Id*. at 50994.

Contrary to Profill's assertions, the Court does not find within RCRA either an express or implied federal preemption of state requirements regarding site location. In fact, states may adopt more stringent procedures. In Tennessee, Part Seven authorizes local governments to either approve or disapprove of the location of solid waste facilities, but that Part does not impose a ban on solid waste disposal. The Court finds that Profill has failed to demonstrate federal preemption by the RCRA of the Tennessee Solid Waste Disposal statutes. Accordingly, the chancellor's decision dismissing this claim is affirmed.

## V. Profill Has Not Been Denied Due Process

Profill asserts that there has been a denial of administrative due process of law arising from the Department's alleged delay in processing the permit application in order to allow the legislature to amend Part Seven. Profill contends the Department intentionally "slow walked" its permit application under pressure from the Speaker of the Tennessee House of Representatives, Jimmy Naifeh, and the Speaker of the Tennessee Senate, Lieutenant Governor John Wilder, who each represent the district in which the proposed landfill is located.

Profill further asserts that the December 7, 1994, notice of deficiency letter was arbitrary in nature in that the sole basis upon which such a letter may be issued is when the

application does not comply with the specific requirements contained within the rules. Profill asserts that the notice of deficiency letter was contrary to the Department's September 2, 1994, notice of compliance letter. Rule 1200-1-7-.02(3)(b)1 states that, after a notice of compliance letter is issued, the Commissioner may only ask for clarification of items in an application and that such request does not render the application incomplete. Profill asserts that the delay in the processing of the application was due solely to political pressure placed upon the Department by the Speakers and that the defendants did not rebut the clear inference that the application was delayed for political reasons rather than for legitimate administrative concerns. On September 2, 1994, the Department issued a notice of compliance letter. According to Rule 1200-1-7-.07(6)(b), the Department was required to complete consideration of Profill's application within 270 days of September 2. The general assembly passed the amendments to Part Seven, and the amendments were signed into law by the Governor on March 15, 1995. The amendments were enacted within 270 days of September 2, 1994, the date of the notice of compliance letter. 1995 Tenn. Pub. Act, chap. 5, § 1 amended T.C.A. § 68-211-701 by inserting language that made Part Seven available to counties even where the proposed landfill was located within a municipality. Fayette County adopted Part Seven, as amended, on March 28, 1995. Immediately thereafter, the Department ceased processing Profill's application. Profill asserts that it has demonstrated by a preponderance of the evidence that its application was "politically killed" and that, as such, it has been denied administrative due process.

In order to prevail on a procedural or administrative due process violation claim, Profill must demonstrate that it possessed a constitutionally protected liberty or property interest. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 2705-06, 2709 (1972). A person's interest in a government benefit is a property interest subject to due process protection only if the entitlement to the benefit is supported by statute or rules. *Perry v. Sinderman*, 408 U.S. 593, 92 S.Ct. 2694, 2699 (1972). A state agency's procedural rules cannot, by themselves, serve as the basis for a constitutionally protected property interest. *Clemente v. U.S.*, 766 F.2d 1358, 1364 (9th Cir. 1985); *Bills v. Henderson*, 631 F.2d 1287, 1298-99 (6th Cir. 1980). In this instance, the rules governing the procedure the Department is to follow do not give rise to a guarantee of due process because there is no property interest at stake. The very rules Profill relies upon to assert a due process violation expressly state:

> The issuance of a permit does not convey any property rights of any sort, or any exclusive privilege.

Rule 1200-1-7-.02(4)(d)2.

Under the Rules, the Department had 270 days from the issuance of the notice of compliance letter on September 2, 1994, in which to make a final determination to grant or to deny Profill's application for a permit. On December 7, 1994, the Department issued the notice of deficiency letter which specified fifteen deficiencies the Department found with Profill's application. Rule 1200-1-7-.07(6)(c) expressly states:

> The above time periods shall be stayed if:
>
> 1. The applicant requests that review be suspended.
>
> 2. The department issues a written notice of deficiency and until the applicant adequately addresses said deficiency.

In this case, the Court declines to find that Profill enjoyed a property interest or entitlement to a public notice of a tentative approval regarding the proposed landfill. ***Chongris v. Board of Appeals of the Town of Andover***, 811 F.2d 36, 43-44 (1st Cir. 1987). Rule 1200-1-7-.02(4)(d)(2) operates to thwart claims of property rights or privilege in such instances. Further, Profill knew that a complete application did not constitute "approval."

Profill's delay argument centers around Wayne Scharber, the Department's deputy commissioner. Throughout the life of the Profill application, Scharber, acting under directions from then - Commissioner J. W. Luna, instructed Scharber to keep Speaker Naifeh's office informed about Profill's application. Some time around February 15, 1995, Scharber learned that Profill's application might be considered at the March 1995 permit review committee meeting. By this time, the bill to amend Part Seven had been introduced into the general assembly and allegedly there were discussions within the Department regarding the consequences of the proposed amendments for Profill. Thereafter, Scharber suggested to Tom Tiesler, Director of the Division of Solid Waste Management that consideration of Profill's application should be postponed until April. According to Scharber, it was Tiesler who made the ultimate decision to postpone consideration of Profill's

application.

Profill expresses concern over Speaker Naifeh's continuing contact with the Department concerning Profill's application. The trial court found, and we agree, that even if true, this has not deprived Profill of its administrative due process rights. The Speaker, after all, represents the people in the affected area. Appellees concede that both speakers showed interest in the application as early as 1992. Nonetheless, the Department continued processing of the application and issued a notice of compliance on the hydrogeological component of the application in 1993, and later, a notice of compliance on the remainder of the application in 1994.

There is evidence that there were numerous unresolved questions within the Department concerning Profill's application and that, as Scharber testified, it simply made more sense to delay the permit review committee's consideration of Profill's application until those questions had been resolved. In December 1994, the Department had requested that Profill separate its landfill and materials recycling facility applications. Profill did not file a separate notification for the processing facility until March 2, 1995. Furthermore, Profill had not submitted the "key personnel" disclosure forms required by T.C.A. § 68-211-106(h), which the Division had requested regarding Profill's principals. Scharber testified that the suggestion of a one month delay was made to avoid any potential problems for the Department; he did not want Profill's permit application considered until all questions had been resolved.

Profill has not demonstrated that it has been deprived of a viable property interest in violation of the administrative due process of law. No constitutional right arises during the application process for a permit. *State ex rel. SCA Chemical Waste Services, Inc. v. Konigsburg*, 636 S.W.2d 430, 437 (Tenn. 1982); *Schneider v. Lazarov*, 390 S.W.2d 197, 200 (Tenn. 1965); *Howe Realty Co. v. City of Nashville, et al.,* 141 S.W.2d 904, 906-7 (Tenn. 1940). Any restriction or limitation upon the Department's discretion to issue or deny a permit is the 270 day time period of Rule 1200-1-7-.07(6), and these rules were properly promulgated in accordance with T.C.A. § § 4-5-201 *et seq.* (1991). The Department did not exceed the 270 day time limit. Without taking into consideration the stay of proceedings created by the notice of deficiency letter of December 7, 1994, only 207 days passed from issuance of the notice of compliance letter on September 2, 1994, until

Fayette County opted into Part Seven on March 28, 1995, and the Department stopped processing the application. However, considering that the stay entered December 7, 1994, was not lifted until March 2, 1995, only 122 of the 270 days had elapsed.

The burden of proof is upon Profill to demonstrate by a preponderance of the evidence that the Department intentionally delayed consideration of its permit application. Upon due consideration of the evidence in this cause, we affirm the chancellor's finding that Profill failed to carry the burden of proof on this issue.

## VI. Part Seven is Not an Unconstitutional Delegation of Legislative Power

Profill asserts that Part Seven amounts to an unconstitutional delegation of legislative power in violation of Article II § 3 of the Tennessee Constitution because it: (1) contains no time limits in which local governments must act; (2) lacks adequate standards or criteria for local governments to follow; and (3) provides that local governments may opt into or out of its provisions by a two-thirds vote of the appropriate legislative body. Contrary to Profill's assertions, the Court does not find that Part Seven violates the Tennessee Constitution. While Article II § 3 of the Tennessee Constitution prohibits the general assembly from delegating its power to make the law, it does not preclude the general assembly from delegating certain of its powers to governmental agencies and local governing bodies if it establishes basic standards to guide their actions. *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 655 (1989); *Lobelville Special School Dist. v. McCanless*, 381 S.W.2d 273 (Tenn. 1964). In *Lobelville*, the Tennessee Supreme Court stated:

> The true distinction is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law; . . . it is only necessary that the statute establish a sufficient basic standard, a definite and certain policy and rule of action for the guidance of the instrumentality that is to administer the law . . . .

*Lobelville*, 381 S.W.2d at 274 (quoting 16 C.J.S. *Constitutional Law* § 133, pages 560-561).

Profill incorrectly asserts that Part Seven contains no time limit within which the local government must act in approving or disapproving the siting of a new landfill or solid waste processing facility. To the contrary, T.C.A. § 68-211-704(a) clearly provides that local governments must make the decision regarding approval or disapproval of proposed landfills within thirty days after the notice and opportunity for public hearing provided in § 703. Part Seven also details the methods and procedures by which local governments must conduct the approval process, which include public notice, comments and public hearings, and these procedures incorporate some of the time frames for issuance of public notice and submission of comments. *See* §§ 68-211-703(d), (e) and (f). Furthermore, T.C.A. § 68-211-704(b) sets forth the criteria which local governments are to consider when evaluating landfill construction. The trial court found these criteria to be vague but noted that Profill did not have a justiciable claim.

Profill next asserts that the "opt-in/opt-out" provisions of T.C.A. § 68-211-707(b) constitute an unconstitutional delegation of authority in that a local government, acting on a whim, may determine at any given time whether Part Seven shall apply. This Court held in *Menefee Crushed Stone Co., Inc. v. Taylor*, 760 S.W.2d 223, 227 (Tenn. App. 1988), that "[o]nly the legislature can say what the general law will be." Part Seven gives local governments discretion regarding whether to adopt it, but that is not the same as making a law's effectiveness dependent upon local government approval. The legislature has exclusive authority to determine whether there will be regulation of landfills, and by enacting Part Seven, the general assembly has vested in local governments the power to accept or reject landfills within their boundaries.

The Court finds persuasive, the trial court's analogy to local option liquor laws which have been held to be constitutional. In *Clark et al. v. State ex rel Bobo*, 113 S.W.2d 374, 379-80 (Tenn. 1938), the Tennessee Supreme Court held that the local option law regarding liquor was complete upon its enactment by the general assembly. The local referendum which was litigated in *Clark* did not bear upon the effectiveness of the statewide law but simply concerned the law's implementation in a particular locality. *Clark*, 113 S.W.2d at 379-80. Appellees have pointed out other laws which permit local option, including horse racing, T.C.A. § 4-36-401 (1996); wheel taxes, T.C.A. § 5-8-102 (1993); metropolitan forms of government, T.C.A. § 7-2-106 (1992); and sales taxes, T.C.A. § 67-6-705 (1994).

Part Seven does not violate Article II § 3 of the Tennessee Constitution because the effectiveness of Part Seven does not depend upon the approval of local governments. Local governments merely have authority regarding the implementation of Part Seven within their particular locale. Accordingly, we do not find Part Seven to be an unconstitutional delegation of legislative power.

## VII. Part Seven Does Not Suspend the General Law of the State

Profill asserts that the 1995 amendments to Part Seven, in conjunction with the requirements of T.C.A. § 68-211-105(h), suspend the general law of the State for the benefit of Fayette County, in violation of Article XI § 8 of the Tennessee Constitution. Article XI § 8 of the Tennessee Constitution requires that only general laws are to be passed by the legislature. It prohibits the general assembly from passing:

> [A]ny law for the benefit of individuals inconsistent with the general laws of the land; [or] . . . any law granting to any individual or individuals, rights, privileges, immunitie [immunities], or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law.

Tenn. Const., art. XI, § 8. The Tennessee courts have interpreted Article XI § 8 as prohibiting the general assembly from passing laws that affect the rights of citizens without affecting others in a like condition elsewhere in the State. *City of Tullahoma, et al. v. Bedford County, et al.*, 01S01-9511-CH-00208 (Tenn. Jan. 27, 1997); *Jones v. Haynes*, 424 S.W.2d 197, 199 (Tenn. 1968); *State ex rel. Hamby v. Cummings*, 63 S.W.2d 515, 516 (Tenn. 1933).

Part Seven affects all citizens in all counties and municipalities of the State. The Court finds that the 1995 amendments to Part Seven are a valid exercise of police power that is neutral and universal in its application to counties and municipalities throughout Tennessee. Accordingly, the Court declines to find that Part Seven violates Article XI § 8 of the Tennessee Constitution.

## VIII. T.C.A. § 68-211-105(h) Has Not Been Repealed by the 1995 Amendments to Part Seven

On appeal, Profill argues that the Department exceeded its authority in terminating its review of the Profill application at the time Fayette County adopted Part Seven. Profill asserts that the Department should be directed to complete review of its application and to make a determination upon the application. Profill maintains that the 1995 amendments to Part Seven repealed by implication the prohibitive language which is contained within T.C.A. § 68-211-105(h). That code section states as follows:

> The commissioner shall not review or approve any construction for any new landfill for solid waste disposal or for solid waste processing in any county or municipality which has adopted the provisions of §§ 68-211-701 -- 68-211-704 and § 68-211-707 until such construction has been approved in accordance with provisions of such sections.

As amended in 1995, § 68-211-707(a) provides:

> The provisions of §§ 68-211-701 -- 68-211-705 and this section shall only apply in any county or municipality in which it is approved by a two-thirds (2/3) vote of the appropriate legislative body. The provisions of §§ 68-211-701 -- 68-211-705 and this section are for local review and approval and shall be conducted prior to issuance of a permit by the department of environment and conservation or the commissioner.

Section 707(a) authorizes cities and counties to review and approve construction once they have opted into Part Seven. Section 105(h) is directed at the authority of the Commissioner and the Department to review and approve construction once the city or county has opted into Part Seven and approved the proposed plans. 1989 Tenn. Pub. Acts, chap. 515, § 13, which was deleted by the 1995 amendments to Part Seven, provided that cities and counties did not have local approval rights if the Department had "public noticed" its tentative approval of a landfill permit. Section 13 provided in relevant part:

> This act shall take effect upon becoming law, the public welfare requiring it and shall be only applicable to any application for permit/registration for which a tentative approval/determination has

not been public noticed by the commissioner.

1989 Tenn. Pub. Acts, chap. 515, § 13.  As amended in 1995, § 707(a) provided that municipalities and counties would have local approval rights even if the Department had already begun the permit review process so long as the Department had not approved or issued a permit.  Instead of tentative approval, which was the relevant event for cities and counties under the 1989 act, the relevant event under the 1995 amendments was final permit approval.

The Court finds that Profill's argument of repeal by implication is without merit.  In *Steinhouse v. Neal*, 723 S.W.2d 625, 627 (Tenn. 1987), the Tennessee Supreme Court held that an implied repeal could only be found where two statutes irreconcilably conflict or where two statutes govern the same subject matter, in which case, the later enactment repeals the former by implication.  Courts should construe statutes so as to avoid placing one statute in conflict with another. *Parkridge Hospital, Inc. v. Woods*, 561 S.W.2d 754, 755 (Tenn. 1978).  We do not find that § 105(h) has been impliedly repealed by the 1995 amendments to T.C.A. § 68-211-707(a) because the statutes are complementary and work in conjunction with one another.

## IX. Part Seven Does Not Impair Any Contractual Rights of Profill

Profill asserts that the amendments to Part Seven unlawfully impair its contractual rights  guaranteed by the Tennessee and United States Constitutions.  As such, Profill asserts that the amendments constitute an improper exercise of police power.  The trial court granted Defendants summary judgment on this claim.

Profill asserts that the contract it executed with the City of Gallaway derived its force from the laws in effect at the time the contract was made in 1992.  Those laws did not require county approval, and neither Profill nor the City of Gallaway recognized that Profill would have to obtain approval from the county.  Therefore, the adoption of Part Seven violated both the United States and Tennessee Constitutions by imposing an unanticipated step in the permit review process which ultimately invalidated the contract.

As this Court stated in *Sherwin Williams Co. v. Morris*, 156 S.W.2d 350, 352 (Tenn. App. 1941), "[a]ll contracts are subject to be interfered with, or otherwise affected by, subsequent statutes and ordinances enacted in the bona fide exercise of police power." As previously noted, the Court finds that Part Seven is a bona fide exercise of police power that specifically addresses the public health, safety and welfare. Accordingly, Part Seven does not unlawfully impair Profill's contractual rights.

## X. Part Seven Violates Equal Protection

The trial court concluded that Part Seven unconstitutionally discriminated against "private" landfills through its exemption of county and municipally owned and/or operated landfills found in T.C.A. § 68-211-706(b). Specifically, that section exempts from the local approval requirements of Part Seven: (1) privately owned landfills that only accept waste generated by the owner, and (2) landfills that are owned and/or operated by a municipality. While the trial court concluded that Part Seven denied equal protection, the trial court applied the doctrine of elision due to the presence of a severability clause contained within 1989 Tenn. Pub. Acts, chap. 515, §11 and reached the determination that Profill had not been denied equal protection. We agree and affirm the trial court's decision in this regard.

Appellees have raised the issue on appeal and assert that Part Seven does not deny equal protection. Conversely, Profill urges that the trial court was correct in its conclusion that Part Seven denied equal protection but asserts that the severability clause does not apply to the 1995 amendments. Therefore, the doctrine of elision should not apply.

A cursory review of Part Seven reveals that it does not treat all landfills equally. Local governments cannot disapprove plans for private landfills to contain solid waste solely generated by its owner and cannot disapprove landfills owned or operated by a municipality or county. Equal protection denial claims under both the Tennessee and United States Constitutions are subject to the rational basis test, that is whether the classification has a reasonable relationship to a legitimate state interest. *State v. Tester*, 879 S.W.2d 823, 828 (Tenn. 1994). As the chancellor observed, the Department classifies landfills according to what is put in them, not according to who

owns or operates them. The trial court found and we agree, that there is no rational basis to sustain Part Seven's discrimination against private landfills. Accordingly, we find this section to be unconstitutional.

A finding of unconstitutionality does not mean that Part Seven in its entirety is unconstitutional. A severability clause contained within 1989 Tenn. Pub. Acts, chap. 515, § 11 states:

> If any provision of this act or the application thereof to any person or circumstance is held invalid, such invalidity shall not affect other provisions or applications of the act which can be given effect without the invalid provision or application, and to that end the provisions of this act are declared to be severable.

1989 Tenn. Pub. Acts, chap. 515, §11.

The doctrine of elision is applicable in this instance. Our supreme court noted in *Lowe's Companies Inc. v. Cardwell*, 813 S.W.2d 428, 430 (Tenn. 1991), that "a court may, under appropriate circumstances and in keeping with the expressed intent of a legislative body, elide an unconstitutional portion of a statute and find the remaining provisions to be constitutional and effective." The supreme court further noted that the expressed intent of the legislative body should appear on the face of the statute, and the supreme court determined that the inclusion of a severability clause is evidence of the legislature's expressed intent. *Lowe's Companies, Inc.,* 813 S.W.2d at 431. *See also*, *Catlett v. State*, 336 S.W.2d 8 (Tenn. 1960).

The legislative intent is crystal clear due to the presence of a severability clause within 1989 Tenn. Pub. Acts, chap. 515, the same chapter which also contained the unconstitutional § 12 which was codified at T.C.A. § 68-211-706(b). We, therefore, conclude that Part Seven unconstitutionally discriminates against private owners and operators of landfills. Nonetheless, the remainder of Part Seven is upheld as constitutionally valid by operation of the doctrine of elision.

The judgment is affirmed, and the costs of this cause are taxed to the appellant.

_____

FARMER, J.



_____

HIGHERS, J. (Concurs)



_____

LILLARD, J. (Concurs)