James CEBULA, Appellant,

v.

The STATE of Texas, Appellee.

No. C14–89–00780–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

March 26, 1992.

Rehearing Denied May 7, 1992.

Dick DeGuerin, Houston, for appellant.

Carmen Falls Hunter, Houston, for appellee.

Before ROBERTSON, SEARS and DRAUGHN, JJ.

## OPINION

SEARS, Justice.

James Cebula brings this appeal from a conviction for aggravated sexual assault and aggravated kidnapping. The jury found him guilty and assessed punishment for each offense at ten years confinement with a $10,000.00 fine. The jury also recommended that both the sentence and the fine be probated. As a condition of probation in each case, the trial court ordered

appellant to serve 120 days in the penitentiary. We affirm.

At 2:27 a.m., May 2, 1988, Houston Police Officer M.W. Dew dispatched unit 2 Adam 21 to a disturbance at 5800 Fulton. Two minutes after the call was dispatched, the call was cleared by 2 Adam 52 stating that the call was unfounded, meaning there was no disturbance or no one at the scene. At that time, the complainant was at a club at 5800 Fulton where she had been drinking with her common law husband and some friends. Because she was drunk and making noise, an employee of the club called police. Although the complainant and the others were still on the scene, appellant cleared the call, apparently before talking to anyone at the scene.

Appellant approached Senovia Garcia and asked who owned the pickup which they were standing around. She said she did and he asked her for her identification and proof of insurance. Appellant told David Sanchez and Juan Payan to stand by the patrol car where Ferguson was standing. He told David to "get the f____ away" and "stand where I can see you." The complainant then yelled at appellant and told him he didn't have to talk to them like that. Without questioning the parties about the reason he was dispatched to the location, appellant told them to leave, and said he was taking the complainant in for P.I. (Public Intoxication). Appellant never questioned the men or searched them for weapons, although David had an 18 inch knife and had an outstanding warrant for his arrest, and Juan had a knife, a 25 caliber automatic, and was on parole.

The complainant was handcuffed and put in the back of the officer's police car. The complainant's friends were unsuccessful in trying to follow the police car and after repeated calls to the jail they were not able to find the complainant.

The complainant testified she fell asleep after she was placed in the police car, and she awoke to find herself in Memorial Park. Appellant asked the complainant if she wanted to go to jail and she said no. Appellant took her into a wooded area then left her there, handcuffed, while he went back to talk to Ferguson. When appellant returned, he removed the handcuffs and told the complainant to take off her pants. Even after the handcuffs were removed, the complainant testified she didn't do anything until she saw appellant place his hand on his gun. The complainant then obeyed his demands, and appellant had sexual intercourse with her.

After appellant finished, he returned to the car and talked with Ferguson. Ferguson then had forced sex with the complainant and later told her he was sorry for what had happened. Although the parties referred to Ferguson as the "black officer," he was actually a uniformed security guard.

The complainant was again handcuffed, returned to the patrol car, and subsequently appellant pulled the car over on the side of a freeway and let her go. The complainant ran to a nearby Stop–N–Go and tried to get someone to help her but she was told to go away. A woman in a white car finally gave her a ride. The two women drove around for a while discussing what to do and each of them called a friend for advice. The girl later took complainant to Rosewood Hospital and informed a doctor of what had happened. The complainant was examined and treated for scrapes and bruises.

Two Houston Police Internal Affairs investigators were called to the hospital to question the complainant. When they were told of the rape, they investigated and found out that appellant responded to the call dispatched the night of the offense. Internal Affairs attempted to question appellant but he invoked his rights to counsel and terminated the interview. He immediately contacted union attorneys. The next day he was ordered to go to Internal Affairs. He attended with his attorney and refused to answer questions. Appellant admitted he was not under arrest and had not been charged with any crime.

Internal Affairs talked with Ferguson but he would not cooperate and would not identify appellant from a photo array. The next day police officers went to Ferguson's home and finally got him to agree to wear

a microphone and get appellant to admit his involvement in the abduction and rape of the complainant. They told Ferguson's mother that appellant was a bad cop and that only her son could get the evidence necessary to convict appellant. She subsequently testified that if she had known her son was a suspect she would have gotten an attorney instead of talking him into helping the police. Ferguson tried to tape appellant from his parent's home phone but it didn't work so he used a pay phone. Appellant freely discussed his involvement and the events of the night of the rape.

In points of error one and two, appellant contends that the court erred in overruling his motion to suppress an audio recording because it violated his right to counsel under the United States and Texas Constitutions. Specifically, appellant argues that from the moment he invoked his constitutional rights to silence and to counsel, all law enforcement personnel were forbidden from any further questioning of him. Appellant relies on *Maine v. Moulten* for the proposition that assistance of counsel cannot be limited to the trial alone. *Maine v. Moulten*, 474 U.S. 159, 170, 106 S.Ct. 477, 484, 88 L.Ed.2d 481 (1985). He asserts that these same standards are adhered to by the Texas Court of Criminal Appeals. *Forte v. State*, 759 S.W.2d 128, 137–139 (Tex.Crim.App.1988).

The United States Supreme Court has held that a continuing criminal investigation of uncharged offenses does not invoke a defendant's Sixth Amendment rights. *Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 2100, 100 L.Ed.2d 704 (1988). The right to counsel arises where a person has been formally *charged* with a particular case. *Id.* at 685, 108 S.Ct. at 2100. Likewise, the Court of Criminal Appeals held that the "critical" stage of the proceedings does not arise until formal charges are brought. *McCambridge v. State*, 778 S.W.2d 70, 76 (Tex.Crim.App. 1989).

The law enforcement officials who asked the co-defendant to wear a tape-recording device were acting within legal parameters. Appellant was not under arrest or charged with the commission of any crime, therefore he had no constitutional right to counsel at that point in time. Points of error one and two are overruled.

In his third point of error, appellant contends that it was error to overrule his motion to suppress the audio recording because co-defendant Ferguson's consent was involuntarily obtained in violation of TEX. CODE CRIM.PROC.ANN. art. 38.23 (Vernon Supp.1991). Appellant argues that neither he nor Ferguson consented to the audio recording of their face-to-face conversation. As support for this argument, appellant notes Ferguson's assertion that he would not have consented if he had known that he would eventually be prosecuted.

When determining whether consent is freely and voluntarily given, the burden is upon the prosecution to prove consent by clear and convincing evidence. *Meeks v. State*, 692 S.W.2d 504, 509 (Tex. Crim.App.1985). There must not have been duress or coercion applied upon the person giving the consent. *Kolb v. State*, 532 S.W.2d 87, 88–89 (Tex.Crim.App.1976). The fact that a defendant may be ignorant of all the consequences of his decision does not vitiate the voluntariness. *Connecticut v. Barrett*, 479 U.S. 523, 530, 107 S.Ct. 828, 832, 93 L.Ed.2d 920 (1987). A trial court may choose to believe any or all of a witness' testimony as a basis for ruling on a motion to suppress. *Valencia v. State*, 820 S.W.2d 397, 399 (Tex.App.—Houston [14th Dist.] 1991, no pet.).

It is undisputed that the law enforcement officials did not tell Ferguson the whole truth. However, Ferguson and his parents knew that Ferguson was in trouble and all were willing to cooperate in the hope of diminishing any punishment Ferguson might receive. Ferguson's ignorance of the full consequences of his decision does not vitiate the voluntariness of his consent. We find that Ferguson's consent was voluntarily given and the audio recording was properly admitted. Appellant's third point of error is overruled.

In his fourth point of error, appellant asserts that the court erred in requiring him to serve a 120–day prison term as a

condition of probation because it impermissibly infringed on the jury's sentencing determination in violation of TEX.CODE CRIM. PROC.ANN. art. 1.04 (Vernon 1977). Appellant urges that the court cannot "enter a judgment for any term other than that specified by the jury's verdict." *Ex parte King*, 233 S.W.2d 501, 503 (Tex.Crim.App. 1950).

Notwithstanding appellant's contentions, where there is an affirmative finding that a deadly weapon was used or exhibited, and the defendant is granted probation, the court may order confinement for a period of not less than 60 or more than 120 days. TEX.CODE CRIM.PROC.ANN. art. 42.12, § 3g(b) (Vernon Supp.1991). The Court of Criminal Appeals has held that article 42.12, § 3g(b) applies when there is an affirmative finding of a deadly weapon made by the jury or the judge. *Ex parte Pena*, 739 S.W.2d 50, 51 (Tex.Crim.App.1987). Although the jury assessed punishment at ten years, probated, the judgment recites an affirmative finding of a deadly weapon, namely a firearm. Thus, the trial court had the authority to sentence appellant to 120 days confinement as a condition of probation. Appellant's fourth point of error is overruled.

For the reasons stated above, the judgment of the trial court is affirmed.