# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00466-CR

**Kyle Alexander Farrar, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT
## NO. 04-224-K368, HONORABLE BURT CARNES, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Kyle Alexander Farrar appeals his conviction by a jury for aggravated sexual assault of a child. *See* Tex. Pen. Code Ann. § 22.021 (West Supp. 2006). The jury assessed appellant's punishment at twenty-four years' confinement, and the trial court sentenced him accordingly. In five points of error, appellant claims that he received ineffective assistance of counsel, and that the trial court erred in denying his motion for new trial without a hearing, in failing to suppress his written statement, and in failing to make findings of fact and conclusions of law regarding the admissibility of his written statement. Finding these contentions without merit, we affirm the judgment of conviction.

## FACTUAL BACKGROUND

The complainant, C.W., was nine years old at the time of the alleged offense and eleven years old when she testified at trial. She testified that on October 31, 2003, after attending

a church party, she went to bed at approximately 9:00 p.m. Her parents had invited several friends over to their home to play volleyball. Later that night, appellant, a friend of the family who had been invited to play volleyball, entered the house to use the bathroom. He then entered C.W.'s bedroom and approached her bed. Appellant knelt down next to C.W.'s bed, placed his hand underneath her pajamas and underwear, and began rubbing her genitals with his hand. He inserted his finger into C.W.'s vagina, hurting her with his sharp nails. After what seemed like a long time, about "twenty minutes," she rolled over, and appellant left. Testifying that she was "scared," C.W. did not report the incident that night. C.W.'s parents, Darla and Ira Hodges, and another witness testified that appellant left the game and was inside the house for about fifteen or twenty minutes. Appellant was the last person to leave at about 1:30 a.m.

The next morning, C.W. reported appellant's conduct to her mother. Mr. and Mrs. Hodges contacted the Williamson County Sheriff's Office and met with Detective Pete Hughey. Along with Detective Hughey, Mr. and Mrs. Hodges took C.W. to be examined by a sexual assault nurse examiner, Robin Jaffers. During the examination, Jaffers observed and then testified at trial that the labia minora of C.W.'s vagina were red, irritated, and scratched. According to Jaffers, C.W.'s injuries were consistent with C.W.'s report of sexual assault by digital penetration. Jaffers opined at trial that the injuries were the result of friction and rubbing, and not of a momentary touching. C.W. was scratched, had pain, and was experiencing anxiety and fear of appellant.

After the examination, Hughey asked Mr. and Mrs. Hodges to come back to the sheriff's office to place recorded telephone calls to appellant. In the conversation with Darla Hodges, appellant acknowledged that he went into C.W.'s bedroom and that, if he did anything, it

2

was "by accident." Darla Hodges referred to the telephone calls in her testimony, but they were not offered into evidence by the State or admitted as evidence at trial. Because the content of Hughey's later telephone call to appellant, which was admitted into evidence, indicates that appellant was expecting his call, the parties agreed to allow Darla Hodges to refer to the call to provide the context for the later call between Hughey and appellant.

On November 2, 2003, Hughey called appellant and requested an interview. Appellant agreed to come in for an interview that same day. Hughey recorded both his telephone call to appellant and the interview with an audiotape recorder. At the conclusion of the interview, appellant gave a written statement acknowledging sexual contact with C.W. Appellant was later arrested and indicted in two counts for aggravated sexual assault by intentionally or knowingly causing the penetration of C.W.'s sexual organ by his finger and a lesser included offense of indecency with a child by contact. The jury found appellant guilty of aggravated sexual assault.

**ANALYSIS**

In overlapping points of error, appellant contends that (i) the trial court erred in failing to suppress his written statement and in failing to file findings of fact and conclusions of law, (ii) his trial counsel provided ineffective assistance, and (iii) the trial court abused its discretion in denying appellant's motion for a new trial and doing so without a hearing.

*Failure to Suppress Appellant's Statement*

In his fourth point of error, appellant claims that the trial court erred in failing to suppress his written statement because it was not voluntary.[1] Appellant filed a motion to suppress his statement based on the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; Article I, section 10, of the Texas Constitution; and article 38.22 of the Texas Code of Criminal Procedure. *See* U.S. Const. amends. IV–VI, XIV; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. art. 38.22 (West 2005). He also claims that the statement, improperly obtained during an interrogation, was inadmissible under article 38.23 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.23 (West 2005).

The trial court conducted a hearing on the motion to suppress. *See id*. art. 28.01(6) (West 2006); *see also id*. art. 38.22; *Jackson v. Denno*, 378 U.S. 368, 380 (1964). The record reflects that on November 1, 2003, after C.W.'s outcry to her mother was reported to the Williamson County Sheriff's Office, Detective Hughey contacted appellant by telephone. Hughey identified himself and told appellant, "I need to talk with you." Appellant agreed to meet Hughey at the

---

[1] In setting forth the issues presented on appeal, appellant asserts in his fourth point of error, "The trial court erred in denying Mr. Farrar's Motion to Suppress his written statement as involuntary." As formulated by appellant, the issue does not challenge appellant's tape-recorded oral statement. In argument in his brief, however, appellant challenges the motion to suppress his "statements," asserting that he "filed a pre-trial Motion to Suppress his written statement with audio recording as having been provided involuntarily." In his fifth point of error, appellant expressly challenges the failure of the trial court to make findings of fact and conclusions of law as to "the admissibility of the objected to written confession in this case." Whether appellant seeks to challenge only the written statement in his fourth point or both the written and tape-recorded oral statements, his challenge is rendered moot because at trial he failed to object to the admission of the tape-recorded statement when it was offered and, therefore, failed to preserve error. We will thus confine our discussion to the admission of the written statement.

4

sheriff's office that afternoon. Appellant arrived at the sheriff's office at approximately 2:00 p.m. Hughey escorted appellant to his office, advising him that the interview was being recorded on audiotape and that "you're free to leave, that you're not under arrest." Appellant acknowledged that he understood. Hughey did not advise appellant of his *Miranda* warnings.[2] When Hughey told appellant that the sexual assault nurse examiner had found injuries to C.W. and "now is the time to get your stuff straightened out," appellant responded, "That's one of the reasons I wanted to talk to you bad."

Appellant told Hughey that on Halloween Day he went "out to drink with people at work." They went to a "couple different places," and then went to the Hodgeses' home at about midnight to play volleyball. After playing volleyball "for a while," appellant went into the house to say hello to C.W. and to give her a hug. Appellant explained that he had been friends with the family for a long time. He told Hughey that he did not "do anything" and that "I do not recall any way I could have" because "I was not in there long." He told Hughey that in a telephone conversation with Darla Hodges he encouraged her to test the girl because he did not think it would show anything. When Hughey advised the appellant that C.W. had a "fresh injury," "she's red," and "she has a tear," appellant said that he just went in to wake her up and tell her goodbye:

> She was balled up, so I went in and—I went to go check her again, sit next to the bed, and I was—I didn't mean to at first. I was touching her there because it was dark and I didn't know where I was grabbing, and for some reason I just—I thought about it for a second, then I stopped. And she didn't sit up and tell me bye and I didn't know what to do after that. I can't believe I did that.

---

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

5

Appellant denied sticking his finger inside C.W. and said he touched her "not long at all." He explained: "Then I just started touching her for a second, then I stopped because I realized what I was doing and I couldn't believe I was doing it."

Hughey then asked appellant to provide a written statement. Appellant gave and signed a written statement acknowledging that he was not under arrest and that the statement was voluntary. The statement on its face recited: "I understand I am not under arrest or being detained against my will and am free to leave at any time. I volunteer the following information and know that it may be used for whatever purpose it may serve." In the statement, appellant also acknowledged that he had read the statement and affirmed that the facts were correct.

In a pretrial hearing on the motion to suppress appellant's statement, Hughey testified that he made no promises to appellant and that at no time during the interview did appellant request to leave or manifest an intent to leave. At the conclusion of the interview, appellant asked that he not be arrested at work if he was going to be arrested. The interview lasted approximately one hour, and appellant left at the conclusion of the interview.

Appellant testified at the suppression hearing that he received a call from the detective and agreed to meet with the officer "because I wanted to let him know, you know, exactly what did and did not transpire that night." Appellant acknowledged that he was not placed under arrest and that he was told and knew that he was free to leave at any time. At the beginning of the interview, the officer was "laid back" and appellant was "telling him my story, and everything was fine." Halfway through the interview, appellant testified, he was "basically through." He "wanted to get up," and he "made a motion to get up." Appellant stated that Hughey put his hands on appellant's

6

wrist, pulled his chair closer to appellant, and "then started in on me again." Appellant said that he signed the statement because he was feeling sorry for himself and he thought it was his "only way out." Appellant testified that Hughey told him what to put in the statement and that it was not a voluntary statement given of his own free will. Appellant stated that he is not a forceful person and does not handle confrontation well. In the following colloquy, appellant stated that the detective instructed him to add a phrase to the statement, and he merely complied:

Q [Detective]: Did you do anything the first time you went in?

A [Appellant]: No.

Q [Detective]: Well, just touch on it that you went in the first and you just—you did hug her, right, and did say hi to her?

A [Appellant]: Yeah.

Q [Detective]: Okay. I'm not taking that away from you, Kyle. I believe that you care. Okay? For her sake, be sure that you put in there that you took your finger and you touched her vaginal area.

A [Appellant]: (Inaudible.)

Q [Detective]: Let me see what you're writing. "When I did, I accidentally touched her," where? See, it doesn't explain where. "[B]ut continued for a second and immediately stopped." It's not saying where you touched her. All right, you touched her where? I want to make sure that's clear. Okay. Then what happened? All right, let me make sure that I understand. All you did was rub, and if your finger went inside, it was an accident?

A [Appellant]: Yes.

7

To the phrase "When I did I acciendtly [sic] touched her," appellant added, "on her private part with my finger." Appellant testified that he was just telling Hughey what he wanted to hear and that, because appellant was the only person that "they were going after," he "was done." The officer's testimony contradicted appellant's testimony. At the conclusion of the suppression hearing, the trial court overruled the motion and found that the statement had been freely and voluntarily given and was admissible in evidence.

In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). The trial court may accept or reject any or all of a witness's testimony or evidence offered. *Alvarado v. State*, 853 S.W.2d 17, 23 (Tex. Crim. App. 1993). In reviewing the trial court's decision, we do not engage in our own factual review; we determine only whether the record supports the trial court's findings. *Romero*, 800 S.W.2d at 543. We are not at liberty to disturb supported findings of fact absent an abuse of discretion. *Cantu v. State*, 817 S.W.2d 74, 77 (Tex. Crim. App. 1991); *Meek v. State*, 790 S.W.2d 618, 620 (Tex. Crim. App. 1990). We shall not defer merely to the trial court's findings regarding the historical facts but also to the trial court's conclusions regarding the legal significance of those facts that turn on an evaluation of credibility and demeanor. *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); *State v. Carter*, 915 S.W.2d 501, 504 (Tex. Crim. App. 1996); *Dubose v. State*, 915 S.W.2d 493, 497 (Tex. Crim. App. 1996). We will normally address only the question of whether the trial court improperly applied the law to the facts. *Johnson*, 68 S.W.3d at 652-53; *Romero*, 800 S.W.2d at 543. If the trial court's decision is correct on any theory of the law applicable to the case, it will be

sustained even though the trial court may have given the wrong reason for its ruling. *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002); *Romero*, 800 S.W.2d at 543; *Calloway v. State*, 743 S.W.2d 645, 651-52 (Tex. Crim. App. 1988).

We must determine from the facts whether the trial court abused its discretion. We first determine whether appellant was in custody and subject to custodial interrogation. Because Hughey advised appellant that he did not believe appellant was telling the whole truth and appellant began to cry as he responded to Hughey's questioning, appellant contends that his will was overborne and that he was physically prevented from leaving when Hughey moved his chair closer to appellant and held his wrist. Appellant asserts that he went from "being free to leave, to being in custody." Hughey's testimony at trial disputed that there was coercion or compulsion.

If an investigation is not at an accusatorial or custodial stage, a person's Fifth Amendment rights have not yet come into play, and the voluntariness of the waiver of those rights is not implicated. *Melton v. State*, 790 S.W.2d 322, 326 (Tex. Crim. App. 1990). Voluntariness is an issue only if the confession was obtained while the speaker was in custody. *Id*.; *White v. State*, 874 S.W.2d 229, 236 (Tex. App.—Houston [14th Dist.]), *pet. dism'd*, 890 S.W.2d 69 (Tex. Crim. App. 1994). *Miranda* and article 38.22 apply only to statements made as a result of custodial interrogation. *Rodriguez v. State*, 939 S.W.2d 211, 215 (Tex. App.—Austin 1997, no pet.). Thus, if appellant's statement did not stem from a custodial interrogation, neither *Miranda* nor article 38.22 requires its suppression. *See id*. at 215; *Morris v. State*, 897 S.W.2d 528, 531 (Tex. App.—El Paso 1995, no pet.).

9

"'Custodial interrogation' is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way." *Cannon v. State*, 691 S.W.2d 664, 671 (Tex. Crim. App. 1985). In determining whether an individual was in custody, the court must examine all the circumstances surrounding the interrogation, but "the ultimate inquiry is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)); *see also Meek v. State*, 790 S.W.2d 618, 621 (Tex. Crim. App. 1990). Questioning a suspect at the police station does not, by itself, constitute custody. *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996). But a police interrogation that begins as a noncustodial interrogation may become custodial during the course of the interview. *Id*.

Although courts have discussed factors that may be relevant to the inquiry, including (1) probable cause to arrest; (2) focus of the investigation; (3) subjective intent of the police; and (4) subjective belief of the defendant, *Meek*, 790 S.W.2d at 621-22; *Melton*, 790 S.W.2d at 326; *Turner v. State*, 685 S.W.2d 38, 42 (Tex. Crim. App. 1985), these four factors have given way to the more flexible "reasonable person" test. *See United States v. Bengivenga*, 845 F.2d 593, 596 (5th Cir.), *cert. denied*, 488 U.S. 924 (1988).

In *Stansbury v. California*, 511 U.S. 318 (1994), the Supreme Court established the rules for determining whether a person being questioned by law enforcement officers is held in custody and thus entitled to *Miranda* warnings. The Court made clear that the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views

harbored by either the interrogating officer or the person being questioned. *Id*. at 323-24. Thus, the officer's subjective view that the individual under questioning is a suspect, if undisclosed, does not bear upon the question whether an individual is in custody for the purpose of *Miranda*. *Id*. at 324. The Court further noted that focus of the investigation alone does not constitute custody. *Id*. In light of the reasonable person test, an officer's knowledge and belief may bear upon the *Miranda* custody issue if they are conveyed to the individual being questioned, but even a clear statement by an officer that the person under interrogation is the prime suspect is not in itself dispositive of the custody issue, for some suspects are free to come and go until the police decide to make an arrest. *Id*. at 325. Whether we apply the four-factor test or the reasonable person test of *Stansbury*, the result here is the same. *See, e.g.*, *Dowthitt*, 931 S.W.2d at 254-55.

In the instant case, appellant accepted the invitation or request of a detective to come to his office regarding an ongoing investigation. If the circumstances show that an individual acts upon the invitation or request of a law enforcement officer and there are no threats, express or implied, that he will be forcibly taken, then that person is not in custody for the purposes of *Miranda*. *Anderson v. State*, 932 S.W.2d 502, 505 (Tex. Crim. App. 1996), *cert. denied*, 521 U.S. 1122 (1997). In the tape-recorded interview, appellant expressed his desire to talk to the officer and straighten things out because, he explained, he had done nothing wrong. Appellant urges that the interrogation that was admittedly noncustodial at the outset became custodial when Hughey placed his hand on appellant's wrist and moved his chair closer to appellant in the small office.

It is the province of the trial court, as the fact-finder in the hearing on the motion to suppress, to evaluate the credibility of the witnesses and determine whether the admittedly

11

noncustodial interview became custodial in nature. The trial judge heard the witnesses and was in the best position to judge their credibility and the weight to be given their testimony. The trial court expressly found that the written statement was not the product of a custodial interrogation. Based on the testimony at the hearing, the trial court could have reasonably concluded that Hughey's interaction with appellant would not have caused a reasonable person to believe that his freedom of movement was restrained to the extent that he believed he was no longer free to leave as the officer had advised him at the beginning of the interview. That appellant committed his statement to writing on a pre-printed form containing language informing appellant that he was not in custody and was free to leave at the time he made his written statement supports this conclusion. Appellant never asked to leave. That appellant recognized he was free to leave is clear from his question to the officer as to whether he should go ahead and quit his job, as well as his request that he not be arrested at his job, and his statement that he would need to take a "week or so vacation." This was in response to the officer's statement, "You're gonna get up and walk out of here. I'm not gonna say that there's not something gonna come out of this and I think you know that, okay?" The interview ended with Hughey asking appellant, "Ready to get out of here?" to which appellant responded, "Yeah."

Because we afford almost total deference to the trial court's determinations, and our review of the record supports the trial court's ruling, we hold that the trial court did not abuse its discretion in denying appellant's motion to suppress. We overrule appellant's fourth point of error.

***Findings of Fact and Conclusions of Law***

Appellant contends that the trial court failed to enter findings as required by article 38.22, section 6, of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 6. When the voluntariness of a statement is challenged, a trial court is required to make findings with regard to its determination. *Id*.; *Urias v. State*, 155 S.W.3d 141, 142 (Tex. Crim. App. 2004). Such findings are mandatory even when there is no objection at trial. *Urias*, 155 S.W.3d at 142. A trial court will be found to have complied with article 38.22, section 6, if the court dictates its findings and conclusions to the court reporter and those findings are made part of the appellate record. *Murphy v. State*, 112 S.W.3d 592, 601-02 (Tex. Crim. App. 2003); *Parr v. State*, 658 S.W.2d 620, 623 (Tex. Crim. App. 1983). As the Dallas court of appeals explained:

> Findings need not be made with minute specificity as to every alleged and hypothetical possibility for physical or mental coercion, but need only be sufficient to provide the appellate court and the parties with a basis upon which to review the trial court's application of the law to the facts.

*Nichols v. State*, 810 S.W.2d 829, 831 (Tex. App.—Dallas 1991, pet. ref'd).

After a hearing on appellant's motion to suppress, the trial court denied the motion and made the following findings:

> I find the statement was voluntary. In fact, it's kind of a classic pattern of an individual that comes down and believes they're going to talk their way out of it and by simple persistence telling them that you don't believe them. I don't understand the psychology behind it, but it happens again and again. People break down and tell them the truth under those circumstances. So the motion to suppress is denied.

13

The district court's findings make specific reference to facts adduced through testimony at the hearing and events on the audiotape. We hold that these findings were recited into the record and, although a close issue, are sufficiently detailed to comply with the requirements of article 38.22, section 6. *See Murphy*, 112 S.W.3d at 601-02; *Nichols*, 810 S.W.2d at 831. We overrule appellant's fifth point of error.

### Ineffective Assistance of Counsel

In his first point of error, appellant contends his trial counsel was constitutionally ineffective for failure (i) to challenge certain evidence, (ii) to investigate fully and interview one of the persons present at the Hodgeses' home on the night in question, and (iii) to obtain the services of an expert to assist him in evaluating the nurse's examination report and in preparing his defense.

The legal principles that govern claims of ineffective assistance of counsel were set out by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). "An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 687). To establish deficient performance, the defendant must demonstrate that his attorney's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Courts have declined to articulate specific guidelines for appropriate attorney conduct, emphasizing instead that the proper measure of performance "remains simply reasonableness under prevailing professional norms." *Wiggins*, 539 U.S. at 521. In addition to deficient performance, the appellant must show that there is a reasonable probability that, but for the attorney's deficiency, the result of the trial would have been different. *Tong v. State*, 25 S.W.3d 707,

14

712 (Tex. Crim. App. 2000). Under this standard, a claimant must prove that counsel's representation so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland*, 466 U.S. at 687.

Our review of counsel's representation is highly deferential; we indulge a strong presumption that counsel's conduct falls within a wide range of reasonable representation. *Id*. at 689; *Tong*, 25 S.W.3d at 712. When assessing appellant's claims, we presume counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy. *Jackson v. State*, 877 S.W.2d 768, 771-72 (Tex. Crim. App. 1994). This Court will not second-guess through hindsight the strategy of counsel at trial, nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness. *Strickland*, 466 at 689-90; *Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979). That another attorney, including appellant's counsel on appeal, might have pursued a different course of action does not necessarily indicate ineffective assistance. *Miniel v. State*, 831 S.W.2d 310, 325 (Tex. Crim. App. 1992); *Harner v. State*, 997 S.W.2d 695, 704 (Tex. App.—Texarkana 1999, no pet.). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996).

Appellant first urges that his counsel was deficient in failing to move to suppress appellant's statements to Darla and Ira Hodges when they placed calls to him following the event at issue. He urges that the couple acted under the direction of the State and elicited the statements by threat and coercion and that he was precluded from developing this evidence because the trial

court denied his motion for new trial without a hearing. Because the recordings were not in evidence, the State responds that appellant is unable to show prejudice. The State also asserts that appellant failed to raise this claim in his motion for new trial and, therefore, failed to present an adequate record on which this Court may evaluate his trial counsel's actions.

At the beginning of the trial,[3] the State recited on the record that there were telephone calls between appellant and both Darla and Ira Hodges: "[W]e discussed that on those phone calls there are things that are extremely detrimental to the defendant as well as things that could be culpatory [sic] to the defendant." The parties agreed that they would not proffer the recordings, but they would reference the calls to show how Hughey came to ask the questions he did in the interview. The State agreed to "make clear that he didn't confess in those tapes." Appellant's counsel alerted the court that, if the State allows "specifics" to come into evidence that are harmful to his client, he might seek to play the entire recordings. He then suggested that the court "exclude the tapes in their entirety, and nobody can refer to them." Neither party made a motion at that time relating to the telephone tapes, and the court did not rule on the admissibility of the recorded conversations. The court concluded:

> I can't make an evidentiary ruling until the issue is brought up. It sounds like both of you want to avoid having them come in. But it also sounds like either side could knock around enough, if they open enough doors, that they do come in. We'll just have to play it by ear and see what happens.

---

[3] The discussion occurred in the context of a motion in limine which does not appear in the record.

During opening argument, the State referred to statements appellant made during the recorded telephone conversation with Darla Hodges in response to her characterization of C.W.'s accusation that appellant touched C.W. The State argued:

> "[C.W.] is telling me you touched her." He says, "Well, if I did, it must have been an accident. I don't think I did. No, I didn't. I don't remember that. If K—it must have been because I was drinking. No, I didn't do it. I didn't do it. I wouldn't have done that. Well, if she says I did it, I did it."

There was no objection to the argument.

At trial, both Hughey and Darla Hodges referenced her telephone calls to appellant. Hughey testified that he asked Darla Hodges to place a call to appellant and ask him about C.W.'s accusation. Hughey testified that appellant, in response to Darla Hodges's questioning, told her that he was not sure, that maybe he did, but if he did, it was an accident and that he did not mean to touch her. Based on that conversation, Hughey called appellant to request an interview. Darla Hodges then testified that appellant told her that "if he did it, it was by accident" and that maybe "he had had something to drink." At that point, appellant's counsel asked to approach the bench, advising the court that:

> Your Honor, we have the motion in limine regarding these tapes, and the question was how much will be—your Honor, we discussed the motion in limine regarding these tapes prior to getting into them. Now, we both understood that a little bit of the testimony is going to be fine. But if they're going to get into every little bit of pro-State stuff that's going to happen. I don't see a way without being able to play all the tapes. I don't want to have to do that. But my understanding is that we're going to limit it to he never outright said he did it. But he made some statements that would have corroborated the story, such as he went in the room. He woke her up. He said good night. I'm okay with that stuff. But if we start getting into the intoxication issues, then that's prejudicial leaning toward it happened.

17

The State agreed to limit testimony about the conversations except to "make clear that [appellant] never came out and admitted." Defense counsel agreed, concluding that "[w]e might just be we've got to play the tapes, but we'll see how far it goes." Darla Hodges then testified:

Q [State]: Now, in all fairness, he never came out and said that he did this?

A [D. Hodges]: No.

Q [State]: Never confessed or admitted to you that he had actually gone in and—he went in but not that he had actually touched her private area?

A [D. Hodges]: Her private area, right.

Q [State]: It was only, "If I did, it was an accident."?

A [D. Hodges]: Yes.

Ira Hodges did not testify concerning any recorded telephone conversation he had with appellant. None of the recordings of telephone conversations between appellant and Darla and Ira Hodges were offered or admitted as evidence at trial.

Appellant did not raise this claim of ineffectiveness in his motion for new trial. A claim of ineffective assistance may be properly raised on direct appeal only if the appellate record is developed sufficiently to allow this Court to evaluate the reasoning behind trial counsel's actions. *Moore v. State*, 140 S.W.3d 720, 728 (Tex. App.—Austin 2004, pet. ref'd). Absent evidence of counsel's reasons for the challenged conduct, we will not conclude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); *Thompson*,

18

9 S.W.3d at 814. On this record, we cannot conclude that counsel's actions with regard to the recorded telephone conversations between appellant and Mr. and Mrs. Hodges were deficient. The referenced testimony concerning portions of the recorded telephone conversations provided little, if any, benefit to the State in support of its case. It merely provided a context for other testimony and was consistent with appellant's defense strategy of accident and lack of intent. When defense counsel objected, the State agreed to limit testimony and elicited testimony helpful to the defense and consistent with the defense strategy. Defense counsel reserved the right to play the tapes in their entirety, but ultimately, the tapes were not played for the jury and do not appear in the record. Although appellant complains on appeal that the State agreed that the tapes were "extremely detrimental" to appellant and that they "detail devastating extraneous offenses, specifically Mr. Farrar's 'prior sexual assault case,' as well as 'fighting incidents and screaming matches between him and [his girlfriend],'" this evidence was neither offered nor admitted at trial.

It is unlikely that the tapes would have been suppressed. Moreover, appellant advances no ground on which the tapes would have been suppressed and, therefore, fails to demonstrate the result of the suppression hearing would have been different. As with the later statements given by appellant, he was not in custody when he had the conversations with Mr. and Mrs. Hodges, and he had not been charged with any offense. *See Cebula v. State*, 828 S.W.2d 234, 236 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd) (audiotape recording of telephone conversation between defendant and co-defendant admissible because, at the time of the conversation, defendant was not in custody and had not been formally charged with the offense). The act of recording the conversations was legal because Mr. and Mrs. Hodges were aware of and

19

consented to the recording.[4] Even apart from appellant's failure (i) to provide a record upon which this Court could evaluate whether counsel's conduct was deficient with respect to the recordings and (ii) to show prejudice, we cannot say that counsel's conduct regarding the tape-recorded conversations fell below an objective standard of reasonableness or that the result of the trial would have been different. *See Strickland*, 466 U.S. at 687-88.

Also under the rubric of his counsel's ineffectiveness and failure to move to suppress the telephone recordings, appellant urges that his statement given to Hughey should have been suppressed because it was the product of and tainted by the alleged illegal telephone calls from Darla and Ira Hodges. Because we have found that the recordings were not introduced into evidence, are not part of the record, and were not illegal, we conclude that this contention is without merit.

Appellant also urges that his counsel was deficient because he failed to request a jury instruction on the voluntariness of appellant's statement. As we have also addressed, appellant urges that his statement was involuntary and was given while he was in custody. His counsel moved to suppress the statement on this ground, but did not seek a jury instruction to advise the jury that, if it believed or had a reasonable doubt that the evidence was obtained illegally, the jury shall disregard the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.23(a). The State responds that appellant was not entitled to an article 38.23 instruction as to the voluntariness of his oral confession because, when the recording of his oral statement was offered at trial, his counsel said "no objection." And,

---

[4] *See* Tex. Pen. Code Ann. § 16.02(c)(3)(A) (West Supp. 2006) (providing as affirmative defense to unlawful interception of communication that person who is a party to the communication has given prior consent to interception).

20

the State argues, appellant suffered no prejudice from the failure of his counsel to request an instruction concerning his written statement.

That his counsel stated that he had "no objection" to the offer of the oral statement does not address whether counsel was thereby deficient. The question remains whether counsel's conduct was deficient because he failed to request a jury instruction on voluntariness. Appellant does not separately challenge on appeal the failure of the trial court to give a jury instruction on voluntariness. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 6.

Generally, when evidence from any source raises a defensive issue and the defendant properly requests a jury charge on that issue, the trial court must submit the issue to the jury. *Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993) (citing *Moore v. State*, 574 S.W.2d 122, 124 (Tex. Crim. App. 1978)). The trial court must then instruct the jury to disregard illegally obtained evidence if the defendant raises a fact issue concerning the manner in which the evidence was obtained and requests the instruction. *Thomas v. State*, 723 S.W.2d 696, 707 (Tex. Crim. App. 1986). The evidence raising the issue may be strong, weak, contradicted, unimpeached, or unbelievable. *Muniz*, 851 S.W.2d at 254 (citing *Sanders v. State*, 707 S.W.2d 78, 80 (Tex. Crim. App. 1986)). Article 38.23(a) provides that in any case where a party raises an issue regarding whether evidence was obtained in violation of the laws of Texas or the United States, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained because of such a violation, then the jury shall disregard any such evidence. Tex. Code Crim. Proc. Ann. art. 38.23(a); *see also Miniel*, 831 S.W.2d at 316.

21

Before an instruction is required, however, some evidence must be presented to the jury that raises the voluntariness issue. *Butler v. State*, 872 S.W.2d 227, 236 (Tex. Crim. App. 1994). "Only when some evidence is presented that a confession is *not* voluntary is the matter put in issue." *Miniel*, 831 S.W.2d at 317 (emphasis added). Thus, we must determine whether any evidence was presented to the jury which shows the confession was not voluntary, thus triggering counsel's obligation to request the instruction.

Appellant argues that the voluntariness issue was properly raised when the tape-recorded interview and the transcript of the interview were admitted into evidence. He then relies on his counsel's closing argument and the State's rebuttal argument to support the requirement of an instruction on voluntariness. But a review of the evidence admitted does not reveal any evidence that appellant's statement was involuntary. Appellant neither testified at trial nor called any witnesses on the issue of the voluntariness of his statement. Hughey testified that there was no coercive conduct to induce the statement, that he did not make the defendant any promises to get him to give or write a statement, and that the statement was a product of the defendant's free will. On cross-examination, Hughey testified that appellant's demeanor changed during the interview. He was calm at the beginning, but appellant was crying and upset by the end of the interview. Hughey testified that the office was small and that at one point he moved closer to the defendant and "patted him, held onto his arm." Hughey explained that he was "trying to make him understand and feel comfortable" because he was "sitting there crying, sobbing." Hughey testified, "That's when I moved in and patted him, 'It's okay.'" And the appellant appeared to accept the comforting.

22

No evidence was presented that raised an issue as to whether appellant's statement was involuntary. As we have already discussed, it was not error to deny appellant's motion to suppress the statement because he was not in custody. Having reviewed the record, we find nothing showing that the issue of the statement's voluntariness was raised before the jury, and the requested jury instruction was therefore not required. *See Butler*, 872 S.W.2d at 236-37; *Miniel*, 831 S.W.2d at 317. Accordingly, because the issue was not raised by the evidence, counsel was not deficient in failing to request the jury instruction. *See Roberson v. State*, 852 S.W.2d 508, 511 (Tex. Crim. App. 1993) (finding counsel's failure to request jury instruction was not deficient where defendant was not entitled to instruction).

Appellant also argues that his counsel failed to conduct an independent factual investigation. When addressing the specific question of counsel's duty to investigate the facts and interview or call potential witnesses, the Supreme Court advises that courts must "conduct an objective review of [counsel's] performance, measured for 'reasonableness under prevailing professional norms,' which includes a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'" *Wiggins*, 539 U.S. at 523 (quoting *Strickland*, 466 U.S. at 689). In other words, the reasonableness of an attorney's pretrial investigation into possible exculpatory evidence and witnesses depends upon the facts known by or available to counsel at the time he made the decision whether to conduct further investigation, interview potential witnesses, or call them to testify. *See Strickland*, 466 U.S. at 689-90.

In this case, the issue that counsel failed to conduct an adequate and independent factual investigation was raised in appellant's motion for new trial. Specifically, appellant urges that

23

his counsel failed to investigate the presence of Alex Stone at the Hodgeses' residence on the night of the offense. An investigator for appellant's appellate counsel searched court records and found an indictment that charged Stone with sexual assault of a child in May 2004. The indictment was filed in August 2004, and Stone was placed on deferred adjudication and community supervision on June 2, 2005. Stone's name was included on the State's witness list on December 1, 2004, along with twenty-five other witnesses.

Stone was known to appellant. In his audiotaped statement to Hughey, appellant described arriving at the Hodgeses' house late on Halloween night. The Hodgeses were playing volleyball with another couple. Another individual, Michelle, left when appellant arrived. Appellant then told Hughey that "another kid showed up," who "has a lot of drug problems, causes a lot of mischief." The following exchange occurred between appellant and the detective:

A [Appellant]:      The only thing after now thinking about it that Alex came over, which I don't even want to go down that route. I mean that's—I mean, I know he's not a great kid, he's had a lot of problems, but—but maybe Alex because he was in the house, and we didn't think about this last night about Alex being there. We totally forgot because he showed up late in the day—or in the evening.

Q [Detective]:      And this is this other guy you're talking about?

A [Appellant]:      Yes.

Q [Detective]:      Alex?

A [Appellant]:      That's his name, Alex. I don't know what his last name is.

Q [Detective]:      She's not saying Alex, Kyle. She's saying your name. She is saying the whole entire story matching identical to yours. Identical to your story about going in and giving her a hug and

24

all the things, you know, and all that stuff. All but right to the point about the touching.

Although the State listed Stone as a possible witness, it did not call him as a witness. That Stone was on deferred adjudication was not admissible evidence generally and could not have been used to impeach Stone if he had testified. *See* Tex. R. Evid. 404(b). Even if the evidence was relevant or admissible, appellant does not show that the result of his trial would have been different. C.W., who knew appellant, testified that appellant was the one who entered her room on the night in question and touched her genitals. As Hughey observed in the transcript excerpt, appellant admitted to Hughey that he entered C.W.'s room and touched her on "her private part" with his finger. Appellant's identity as the perpetrator of the assault was not in question; at issue was his intent.

Likewise, appellant's claim that his counsel was deficient in failing to seek the services of an expert witness to examine the report prepared by Nurse Jaffers documenting her examination of C.W. is without merit. Because the diagram of the injury depicted a red linear abrasion and the narrative portion of the report described the injury as an abrasion, an injury consistent with rubbing, appellant urged in his motion for new trial that the diagram was inconsistent with the narrative portion. At trial, Jaffers testified that she documented a linear abrasion, which is a scratch or a scrape, on C.W.'s labia minora "at the 12:00 position which would be the top." She described "where trauma broke the tissue apart with pressure, and it split." She also found "generalized redness and irritation to the labia minora" from "1:00 to 11:00." The testimony established that there were abrasions and also "the cut" inside the female sexual organ. Appellant has not shown that there is any inconsistency or "discrepancy" or that trial counsel's failure to obtain

25

an expert prejudiced him in any way. Even apart from Nurse Jaffers's testimony, C.W. described the assault and identified appellant, and appellant's statement to Hughey tracked C.W.'s description of the assault, except as to duration and intensity.

A review of the record shows that counsel's performance was reasonable under prevailing professional norms, and he adhered to a sound strategy that any touching was accidental and that appellant lacked intent. Counsel on appeal does not urge that there was an absence of a sound trial strategy. *See, e.g.*, *Bone v. State*, 77 S.W.3d 828, 830 (Tex. Crim. App. 2002) (refusing to reverse on appellant's claim of ineffective assistance of counsel in the absence of evidence explaining counsel's decisions). From this record, it is reasonable to conclude that there were legitimate and professionally sound reasons for trial counsel's conduct. Appellant has failed to present any evidence to rebut the presumption that his counsel's actions conformed with sound trial strategy. *See Strickland*, 466 U.S. at 689. If counsel's conduct was deficient in any respect, appellant has not stated how any deficiency prejudiced his defense. *See id*. at 691-92. We overrule appellant's first point of error.

***Motion for New Trial***

In his second and third points of error, appellant contends that the trial court abused its discretion in denying appellant's motion for new trial and doing so without a hearing. As grounds for the motion, appellant claimed that he was deprived of the effective assistance of counsel because (i) his trial counsel did not conduct an adequate independent pretrial investigation and the State failed to disclose exculpatory information to appellant and (ii) trial counsel did not consult with independent expert witnesses necessary to provide an effective defense, including a mental health

26

professional to prepare evidence of temporary insanity or a medical professional to review the report prepared by the nurse who examined C.W.

As a preliminary matter, we first discuss whether appellant's motion for new trial was properly before the trial court. Appellant filed his first motion for new trial on July 22, 2005. The record does not reflect that appellant ever presented that motion to the trial court. A second motion was timely filed on August 22, 2005, and was overruled by operation of law. Appellant attached to this second motion for new trial a "certificate of presentation" stating that "On this 22nd day of August, 2005, the Defendant's Motion for New Trial was presented to the trial court within ten (10) days of filing." Under counsel's unverified signature on the page is a handwritten notation of a name with the following identifying information under the name: "court administrator, 368th District Court, August 22, 2005." The court's docket sheet does not reflect the filing of either motion for new trial or that either motion was brought to the attention of the trial court after filing. Because the motions were evidently overruled by operation of law, there is no order denying either motion.

Rule 21 of the Texas Rules of Appellate Procedure governs new trials in criminal cases. Tex. R. App. P. 21. Rule 21.4(a) provides that a defendant may file a motion for new trial "before, but no later than 30 days after, the date when the trial court imposes or suspends sentence in open court." *Id*. 21.4(a). The record in this case reflects a timely filing which is not disputed by the State.

It is not sufficient that a motion for new trial was filed in a timely fashion with the clerk of the trial court. *Reyes v. State*, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993). It must also be presented or brought to the trial judge's attention in a timely way. *Carranza v. State*, 960 S.W.2d

27

76, 78 (Tex. Crim. App. 1998). Rule 21.6 requires that a motion for new trial be presented to the trial court within ten days after it is filed, unless the trial court grants permission for late presentation. Tex. R. App. P. 21.6. Failure to present the motion to the judge within the time limits results in the motion being overruled by operation of law 75 days after sentencing. *Carranza*, 960 S.W.2d at 79.

Finding the word "present" to be "somewhat ambiguous" and resorting to extra-textual sources, the court of criminal appeals determined that the purpose or object sought to be obtained by this requirement "is to put the trial court on actual notice that a defendant desires the trial court to take some action on the motion for new trial such as a ruling or a hearing on it." *Carranza*, 960 S.W.2d at 78. The record must show the movant for a new trial sustained the burden of actually delivering the motion to the trial court or otherwise brought the motion to the attention or actual notice of the trial court. *Id*. at 79. The presentment must result in actual notice to the court and may be evidenced by the judge's signature or notation on a proposed order or by a hearing date set on the docket. *Id*. at 79-80.

Texas courts have generally held that the mere filing of a motion for new trial is not sufficient to show "presentment" as required by the rule; the record must show the movant actually delivered the motion to the trial court or otherwise brought it to the attention or actual notice of the trial court. *See, e.g.*, *Longoria v. State*, 154 S.W.3d 747, 762 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd); *Hernandez v. State*, 84 S.W.3d 26, 31 (Tex. App.—Texarkana 2002, pet. ref'd); *Gumpert v. State*, 48 S.W.3d 450, 458-59 (Tex. App.—Texarkana 2001, pet. ref'd). In *Hernandez*, the Texarkana court held that a notation by defense counsel on the motion that he had discussed the

motion with court personnel was not sufficient proof of presentation. The Texarkana court distinguished *Daniels v. State*, 63 S.W.3d 67 (Tex. App.—Houston [14th Dist.] 2001, no pet.), which addressed the issue of sufficient "presentment," and held it sufficient when the record contained a docket entry reflecting "Motion for New Trial was presented to the Court." Based on this docket entry, the Fourteenth Court of Appeals in *Daniels* held that the trial court had the required actual notice of the motion and the defendant had fulfilled his obligation under rule 21.6. *Daniels*, 63 S.W.3d at 69. But the same court concluded that a docket entry stating "Mo. for New Trial filed" was not sufficient to show presentment. *Longoria*, 154 S.W.3d at 762. The court observed that the key difference between the *Longoria* and *Daniels* cases was that in *Longoria* the docket statement reflected that the motion was "filed," while the docket entry in *Daniels* stated that the motion "was presented to the Court." *Id*. In both cases, unlike the instant case, docket entries existed that referenced the motion for new trial.

Two courts of appeals have held that the presentment requirement can be met by presentment to the court coordinator who acts as an "agent for the trial court"[5] in the pursuit of judicial economy and efficiency. *Butler v. State*, 6 S.W.3d 636, 641 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd); *Estrella v. State*, 82 S.W.3d 483, 485-86 (Tex. App.—San Antonio 2002, pet. dism'd) (following *Butler)*. In *Butler*, the court abated the appeal and remanded the cause to the trial court for the limited purpose of holding an evidentiary hearing to determine the facts surrounding the presentment. *Butler*, 6 S.W.3d at 638. On remand, the trial court entered findings of fact that

---

[5] *Higginbotham v. Collateral Protection, Inc.*, 859 S.W.2d 487, 490 (Tex. App.—Houston [1st Dist.] 1993, writ denied).

29

(i) counsel timely filed the motion, (ii) counsel informed the court coordinator of the filing of the motion and asked that it be set for hearing, (iii) the motion was set for a hearing on a date certain and was then rescheduled as "approved by Court," and (iv) a hearing was held on whether there had been a timely presentment. *Id.* Based on these facts, the court of appeals held that appellant satisfied the presentment requirement by presenting the motion to the court coordinator. *Id.* at 641. Likewise, in *Estrella*, the defendant filed a motion and presented it to the court coordinator, who then filled out the "case setting form" and set a hearing date. The court of appeals concluded that the trial court erred in finding that Estrella failed to satisfy the presentment requirement. *Estrella*, 82 S.W.3d at 486. In the absence of a record showing that the motion was presented to the trial court, the court's order denying the motion for a new trial is sufficient to presume that the motion was presented to the trial court. *Musgrove v. State*, 960 S.W.2d 74, 76 (Tex. Crim. App. 1998); *Scaggs v. State*, 18 S.W.3d 277, 282 (Tex. App.—Austin 2000, pet. ref'd).

Here, there is nothing in the record to substantiate that the trial court had "actual notice" of appellant's motions for new trial. The handwritten notation by court personnel on the Certificate of Presentation, even if it was intended to be a signature, is unverified and contains no indication of the action taken. The certificate contains only the unilateral assertion by counsel that on the same date the motion was filed, August 22, 2005, the motion was "presented to the trial court within ten days of filing." The certificate was attached to the motion, and the handwritten notation is also dated August 22. It does not contain an acknowledgment of presentment to the judge—or the

30

court coordinator—and neither the filing nor the presentment is referenced on the docket sheet.[6]

Because the record does not contain an acknowledgment of presentment to the trial court and the docket sheet does not show the filing of the motion or presentment, we hold that appellant did not timely "present" the motion for new trial to the trial court as required under rule 21. *See* Tex. R. App. P. 21; *Hernandez*, 84 S.W.3d at 31.

But even assuming appellant's motion for new trial was properly presented to the trial court, we hold that the motion and affidavits, even if assumed to be true, were not sufficient to entitle appellant to a hearing or to grant appellant a new trial.

The right to a hearing on a motion for new trial is not an absolute right. *See, e.g.*, *Reyes*, 849 S.W.2d at 815; *Moore v. State*, 4 S.W.3d 269, 278 (Tex. App.—Houston [14th Dist.] 1999, no pet.). We review a trial court's refusal to hold an evidentiary hearing on a motion for new trial under an abuse-of-discretion standard. *Reyes*, 849 S.W.2d at 816. A trial court abuses its discretion in failing to hold a hearing when a defendant presents a motion for new trial raising matters not determinable from the record. *Holden v. State*, No. PD-1699-05, 2006 Tex. Crim. App. LEXIS 1817, at *4 (Tex. Crim. App. Sept. 20, 2006); *King v. State*, 29 S.W.3d 556, 569 (Tex. Crim. App. 2000); *Reyes*, 849 S.W.2d at 815-16. We do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable. A trial court abuses its discretion in denying a motion for new trial only when no reasonable view

---

[6] Generally, docket sheets are not evidence. *Rodriguez v. State*, 834 S.W.2d 592, 595 (Tex. App.—Houston [1st Dist.]), *pet. granted in part & ref'd in part; remanded in part on other grounds*, 844 S.W.2d 744 (Tex. Crim. App. 1992). However, "[a] docket entry may supply facts in certain situations, but it cannot be used to contradict or prevail over a final judicial order." *N-S-W Corp. v. Snell*, 561 S.W.2d 798, 799 (Tex. 1977) (internal citation omitted).

of the record could support the trial court's ruling. *Holden*, 2006 Tex. Crim. App. LEXIS 1817, at *5 n.6 (citing *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995)).

The motion must be accompanied by affidavits specifically showing the grounds for relief. *King*, 29 S.W.3d at 569; *Jordan v. State*, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994). But a trial court may rule based on sworn pleadings and affidavits without oral testimony; live testimony is not required. *Holden*, 2006 Tex. Crim. App. LEXIS 1817, at *8-9; *Rivera v. State*, 89 S.W.3d 55, 58 n.9 (Tex. Crim. App. 2002). While the affidavits are not required to reflect every argument legally required to establish relief, the motion or affidavits must show reasonable grounds exist for holding that such relief could be granted. *Jordan*, 883 S.W.2d at 665. An affidavit that is conclusory or that is unsupported by facts is not sufficient to put the trial court on notice that reasonable grounds for relief exist. *Buerger v. State*, 60 S.W.3d 358, 363 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). The purpose of the hearing is for a defendant to fully develop the issues raised in a motion for new trial. *Jordan*, 883 S.W.2d at 665.

In support of his motion, appellant attached affidavits from Kip Farrar, appellant's brother, and Teresa Farrar, appellant's mother. In their affidavits, they averred that appellant had an "unusual style of communication" or a "communication disorder" that frequently caused people to misunderstand what appellant told them. Another witness averred generally that she was a friend of the family and that she was aware appellant had a learning disability. Appellant also attached his own affidavit denying that he was guilty of the conduct of which he was accused, stating that he had encountered Alex Stone at the county jail after his conviction and that Stone "started to act very funny." With respect to his statement, appellant claimed that he "really had no choice" but to talk

32

with Hughey because he felt that it was an order when Hughey told him, "I need to talk to you." The affidavits also set forth ill will between the families and prior contacts between appellant and Darla Hodges, the general nature of which had been raised at trial. Appellant included the affidavits of an investigator describing Alex Stone's criminal background and a registered nurse describing a purported discrepancy between Nurse Jaffers's characterization of C.W.'s injuries and the depiction of the injury on a diagram accompanying her report. Also appended to the motion were two unexecuted drafts of affidavits submitted by appellate counsel on behalf of appellant's trial counsel showing that he refused to sign the affidavits.

Appellant argues that he was entitled to a hearing because the State failed to disclose evidence that Alex Stone, who appeared on the State's witness list, was on deferred adjudication for the offense of sexual assault of a child and that this evidence was determinable from facts outside the existing trial record. But Alex Stone was not called by the State to testify as a witness, and appellant does not show how this testimony was relevant or that it was not known to him during his trial. The record is clear that Stone was known to appellant. Appellant first mentioned Stone in his interview with Hughey. In any event, identity was not at issue. C.W. testified that appellant committed the offense, and appellant acknowledged some aspects of the conduct, even as he claimed it was an accident. There was ample evidence that appellant was the perpetrator of the offense. The admission of evidence showing that another person at the residence on the night of the offense was on deferred adjudication for a similar type of offense would not have led to a different result at appellant's trial. In addition, for the reasons we have previously discussed, appellant has not presented a threshold showing that his counsel provided ineffective assistance or that any alleged

33

deficiency prejudiced the defense sufficient to trigger the requirement for a hearing on that issue. The affidavits do not rise to the threshold necessary to overcome the presumption of effective assistance.

Appellant has not asserted a reasonable ground in his motion for new trial that cannot be determined from the record. We conclude that the trial court did not abuse its discretion in failing to hold a hearing.

Moreover, the motion and affidavits were not sufficient to grant appellant a new trial. Appellant either complains about matters that he could—and did—object to at trial, or he suggests that evidence was fabricated without explaining why he could not have known of these alleged fabrications at trial. For example, an affidavit was submitted by a corrections officer who dated Darla Hodges for about two years from 1996 to 1998. He averred that she was "bad news" and that she was dating another police officer when she was dating him, and that, on one occasion, they both showed up at her apartment at the same time. Darla Hodges accused the officer of hitting her and causing a bruise to her eye. Although charges were filed against him, they were later dismissed. The officer also averred that he knew that Darla Hodges had been molested by her stepfather. Although he told appellant he would testify, he never heard from appellant's attorney. Appellant's brother averred that appellant told him that a couple of months before Halloween, appellant had been at the Hodgeses' house taking a shower and Darla climbed into the shower with him. She "probably" became mad when "they didn't do anything and he got out." The prior relationship between appellant and Darla Hodges was the subject of ongoing discussions at trial, was determinable from the record at trial, and did not provide sufficient grounds to grant appellant a new trial.

34

We conclude that the trial court was not required to hold an evidentiary hearing on appellant's motion for new trial, and that the trial court did not abuse its discretion in denying the motion.

**CONCLUSION**

Having overruled appellant's points of error, we affirm the judgment of conviction.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed

Filed:   November 10, 2006

Do Not Publish

35